# TRUEMAN SKINNER et al. *vs.* THOMAS H. GAITHER, JR.

*Participation in Breach of Trust—Liability for Money Received—Guardian and Ward.*

When a party uses money which is lent to him by a guardian and which he knows to be the property of the wards in paying debts for which he is jointly liable with another, he is liable to the wards for the amount so used.

The proceeds of a life insurance policy belonging to certain infants was paid to their mother as guardian. This sum was by her transferred to S., her deceased husband's partner, who used the money in paying a debt due by him and his deceased partner. Afterwards S. agreed to pay said amount to the wards, but did not do so and made an assignment for the benefit of his creditors. *Held*, that the wards were entitled to share as creditors in the distribution of the assets.

Appeal from an order of Circuit Court No. 2, of Balti more City (STOCKBRIDGE, J.)

The cause was argued before MCSHERRY, C. J., BRYAN, FOWLER, BRISCOE, PAGE, BOYD and PEARCE, JJ. (Feb. 11, 1898).

*Richard S. Culbreth*, for the appellants.

*George R. Willis* (with whom was *Ferdinand C. Dugan* on the brief), for the appellee.

PEARCE, J., delivered the opinion of the Court.

George Skinner, trading as George Skinner & Co., made a deed of trust for the benefit of his creditors on the 30th day of April, 1896, to Robert Goldsborough Keene. The The Circuit Court No. 2, of Baltimore City, assumed jurisdiction of the trust which was administered under its orders. On the 1st day of February, 1897, the trustee having made his report, an auditor's account was filed, showing the sum of $2,968.01 in the trustee's hands for distribution among

the creditors of the estate.    There were but five claims filed,
aggregating $6,025.81.    The claim of the appellee was
$5,208.82, and his dividend was $2,565.60.    Each of the
appellants had a small claim on which their respective divi-
dends were $67.04 and $71.11, but there is no contest as
to these claims.    On the 13th of February, 1897, a petition
was filed by Mrs. Isabella S. Turner, a widow, and the
mother by a former marriage, of the appellants, alleging
that on the 21st of April, 1888, the firm of George Skinner
& Co. was composed of herself and George Skinner, and
that on that date they entered into a written agreement that
the firm should be dissolved, on and from that date; that
George Skinner should purchase the stock in trade of the
firm and close up the business; that out of the assets of the
firm he should pay to the said Isabella S. Turner the yearly
sum of one thousand dollars during the settlement of the
firm affairs; to himself the sum of two thousand dollars,
due him by the former firm of Skinner & Co. for services
rendered; to Miss Susan Constable, the sum of one thou-
sand dollars; to Thomas H. Gaither five thousand dollars;
to William and Trueman Skinner, infant sons of Trueman
Skinner, deceased, ten thousand dollars, being the proceeds
of a policy of insurance upon the life of their father; and to
Mrs. Mary Ligan forty-five thousand dollars; and that after
the payment of these sums the assets of the firm should be
divided between the parties to the agreement according to
their several interests as should be thereafter determined.
It was then specially provided that no individual liability
should be understood to be fixed upon the said George
Skinner, for debts due by said firm to Isabella S. Turner,
beyond the assets of the firm.

The prayer of the petition was for an account of all sums
received and paid by said George Skinner, under said agree-
ment, and that such sums as should be found to be due to
her, and to her two sons, should be decreed to be claims
against the trust estate, and should be admitted to divi-
dend therein.    The original agreement was filed with peti-

tion, and its execution was subsequently duly proved. An order *nisi* was passed granting the prayer of the petition, and after proof of service of this order, the same was made absolute, and leave was granted to take testimony in support of the averments of the petition. On the 9th of July, 1897, the appellants filed a petition reciting so much of their mother's petition as was material, and alleging that the net proceeds of the policy heretofore mentioned was $9,902.20, and that the same was received by their mother as their guardian, March 3rd, 1883, and was by her paid on the 19th of November, 1883, to the said George Skinner, who received the same with full knowledge of the character of the fund, and of the appellant's interest therein, as well as as of the fact that there was no legal authority for such disposition of the same, and that the said George Skinner, in pursuance of previous understanding and agreement between himself and their mother, applied the same in part payment of a debt due by their father to Thomas H. Gaither, Senior, the father of the appellee, upon which debt the said George Skinner was liable, either as co-maker or surety. The prayer of the petition was that the appellants be made parties plaintiffs to their mother's petition, and have leave to take testimony to support their claim. An order to this effect was made. The case was argued on the testimony thus taken, and both petitions were, on the 4th of November, 1897, dismissed and the auditor's account ratified, except as to one small claim which was suspended for defect of proof, and from that order this appeal was taken.

There was no written opinion filed with this order and we are thus not advised of the ground upon which the decision was rested.

During the taking of the testimony Mrs. Turner became satisfied there was nothing remaining due to her under this agreement, and she abandoned any personal claim against the trust estate. It was also admitted that all other sums required by said agreement to be paid, had been fully paid by said Skinner, and the only claim which it is sought to

establish is for the sum of $9,902.20 due these appellants, with interest from November 19th, 1883.

The proof shows that their father, Trueman Skinner, died in November, 1882, and that these appellants, who were twin children, were his only children, and were born in 1870. It is also shown, without contradiction, that Mrs. Turner, then Mrs. Skinner, after duly qualifying as guardian of these children, received from the Mutual Life Insurance Company of New York, on the 3rd of March, 1883, the sum $9,902.20—the net proceeds of a policy of insurance for $10,000 upon the life of their father—which she deposited in bank to *her individual account*, together with other sums belonging to her, the whole aggregating $17,818.85 ; and that this whole amount was drawn out by her on two checks, to the order of Skinner & Co.—one dated May 1st, 1883, for $7,500 and one dated November 19th, 1883, for $10,318 85. A certified copy of this life policy is in the record, as well as copies of the two checks above, and of the bank account of Mrs. Skinner upon which these checks were drawn. Mrs. Skinner testified and the documentary evidence showed, that the sum of $9,902.20, the proceeds of the life policy, was included in the check for $10,318.85 given to Skinner & Co., November 19th, 1883. She further testified that she gave this check to Skinner & Co. under the advice, and at the request, of George Skinner, to be used in paying the debts of the firm, and that no part of this sum has ever been repaid to her, or to either of her sons. She testifies in conformity with the agreement recited, that at that time, and up to April 21st, 1888, she and George Skinner composed the firm of Skinner & Co.

Louis M. Reardon—a bookkeeper of Skinner & Co. from 1881 to 1896—examining the letter of the Insurance Company, enclosing the draft to Mrs. Skinner as guardian for $9,902.20, and speaking from his own knowledge of the transaction at the time, testified that this check was for the net proceeds of the $10,000 policy upon the life of

Trueman Skinner, for his two sons; that he himself received it from the Insurance Company, and gave it either to Mrs. Skinner or to George Skinner. Examining the books of the firm kept by him, and the check for $10,318.85 from Mrs. Skinner to Skinner & Co., and speaking again from his own knowledge of the transaction, he testified that the books of the firm show that on November 19th, 1883, the firm received that amount through Mrs. Skinner's check, and that it was paid by Skinner & Co. the same day to Thomas H. Gaither, Senior, the father of the appellee, in part payment of a debt of about $22,000 then due by Trueman Skinner, deceased, to Gaither, and that he had heard George Skinner say that he was security on this debt, or was bound by it or had made himself liable for it, by signing some of the notes, and that no part of the sum thus paid by Mrs. Skinner as guardian to Skinner & Co. had ever been returned by the firm. He still further testified that he was familiar with the origin and history of the loan from Thomas H. Gaither, Sr., to Trueman Skinner; that Skinner borrowed about $20,000 to purchase 300 shares of Texas Pacific stock, then selling in the sixties; that the stock was bought, and was pledged to Mr. Gaither as collateral to the note or notes given for the loan; that after Trueman Skinner's death, this debt was reduced to about one-half the original amount by the application of the amount received from Mrs. Skinner as guardian; that subsequently an assessment of $10 per share was called on this stock, and that Gaither then delivered it to George Skinner to be sold and the proceeds so far as necessary to be paid over to Gaither; that Skinner thereupon placed the stock with J. J. Nicholson & Sons, who paid the assessment of $3,000 and held the stock as security for sometime, but finally sold it for about $7,500, and paid the proceeds, less the assessment and brokerage, to George Skinner, about $4,500, which sum with several hundred dollars more, making $5,000 in all, was paid over by George Skinner to Gaither on this debt. He also testified that during his connection with the

firm from 1881 to 1896, George Skinner alone composed the firm of Skinner & Co., except from February, 1892, to July, 1895, when Thomas H. Gaither, Jr., was a member of the firm; that with this exception he knew no one connected with the business but George Skinner, and that he knew nothing of any private arrangement between Mrs. Skinner and George Skinner.

George Skinner testified that he executed the agreement of April 21st, 1888, with Isabella S. Turner; that he knew there was a life policy of $10,000 on the life of his brother, Trueman Skinner, for his two sons, and that he kept it in his safe; that the net amount thereof, $9,902.20, was paid to Mrs. Isabella S. Turner as guardian; that he got from her the check for $10,318.85 for the purpose of paying it to Thomas H. Gaither, Sr., on a debt due by Trueman Skinner, either upon his note, or note of Skinner & Co.; that he did not recollect whether Skinner & Co. endorsed, or he, individually, but that at that time, he alone composed the firm of Skinner & Co.; that he knew the money belonged to Trueman and William C. Skinner, but that *he* owed Gaither a good deal, and that he thought he had better pay that money to him and stop the interest; that no part of this $9,902.20 had been paid to Mrs. Turner, or to Trueman or to William C. Skinner; that he used every cent of the $17,818.85 received from Mrs. Skinner by the two checks mentioned to pay Mr. Gaither, and that in addition thereto, the 300 shares of Texas Pacific stock were sold as testified to by Reardon, and the proceeds paid Gaither on his debt. He also testified that Mrs. Turner was never known in the business—that all of it belonged to his brother's estate and his creditors, and he surrendered it. These transactions all occurred in 1883, and in 1888 the firm of Skinner & Co. was dissolved, and George Skinner, in the agreement mentioned, solemnly engaged to pay Trueman and William C. Skinner the sum of ten thousand dollars, which he now testifies after the lapse of ten years has never been paid in whole or in part.

We have thus recited at considerable length the substance of the testimony of the only three witnesses examined, in order that the facts might appear from which our conclusions are drawn. There is perhaps some confusion and possible doubt as to whether Isabella S. Turner was in fact a member of the firm of Skinner & Co.; but for the purposes of this case we do not think it material to be decided. If she were such member, she might be liable as such for this amount used by her firm, but this could not affect George Skinner, who would be equally liable for it whether he was a copartner with Isabella Skinner, or was the sole member of the firm, nor in the view we take of the case, is it really material whether George Skinner was, or was not, originally liable in any manner upon the Gaither debt, since in the arrangement of April 21st, 1888, he assumed this debt to the extent of the $10,000 received from Mrs. Turner as guardian—and this assumption was based upon a valid consideration, since he acquired under that agreement the stock, &c., of the whole firm, whether it belonged to himself and Mrs. Turner as copartners, as·stated in their agreement (by which he should be bound in any event), or whether it belonged to his brother's creditors as he testifies ; the only creditors of his brother, so far as appears, sixteen years after his death, being these appellants.

The proof is incontestible from three uncontradicted witnesses, confirmed by all the documentary evidence in the case, that this sum of $9,902.20 belonging to these appellants, was received and applied for his own benefit, by George Skinner in the manner and for the purposes we have set forth ; and that no part of this sum has ever been repaid. The assets of George Skinner are in a Court of Equity, under appropriate proceedings, for distribution among his creditors. The appellants have presented their claim for a dividend, George Skinner admits the indebtedness and the appellee (to his credit) has not availed himself of the plea of limitations in his own interest. Why then should the claim not be allowed ?

In the argument in this Court two grounds were taken
by the appellee.    First, that the agreement of April 21st,
1888, provided that nothing therein should be understood as
fixing upon George Skinner any individual liability beyond the
application of the assets of Skinner & Co., but a reference to
the agreement itself shows that this personal immunity is ex-
pressly restricted to *such debts as may be due Isabella Tur-
ner from said firm*—and can by no stretch of authority or
imagination be extended to a debt which the agreement itself
declares to be due Trueman and Wm. C. Skinner.    Inas-
much as George Skinner was, upon his own testimony,
clearly liable, either as co-maker, or as surety, upon the
Gaither debt, and the money of the appellants was know-
ingly used by him to relieve himself, to that extent, from
liability to Gaither, he thereby became personally liable to
the appellants for the amount so applied by him, and his
engagement made in the agreement, for the payment of
this sum, was but a recognition of the debt demanded by
common honesty.    The second ground taken by the ap-
pellee was that the account of Isabella S. Turner as admin-
istratrix of Trueman Skinner, shows that she charged her-
self, as part of the inventory, with the sum of $11,100, the
appraised value of the 300 shares of Texas Pacific stock
and that she had credit in said account for $22,257.44 paid
Thomas H. Gaither, and that the $9,902.20 belonging to
her sons and employed as before shown, in paying the
Gaither debt, was more than restored to her through this
stock—and that thus her sons can look only to her for re-
storation of the amount.    But this stock, though pledged
to Gaither as collateral security for his loan, was still assets
of her husband's estate, subject to the equitable lien of
Gaither, and the correct mode of charging this in the in-
ventory, would have been to set out there, the fact that it
was so pledged—and that when the stock was sold by the
pledgee the administratrix could have been allowed for it in
whole, or in part, according to the facts.    But the proof in
this case is clear and uncontradicted that though thus

charged as administratrix with this stock, not one cent of it ever came into her hands, and it is equally clear that the overpayment of $12,327.23 shown by this account includes this $9,902.29 belonging to her sons and diverted from them to the payment of the Gaither debt. There has been no attempt by the appellants to subject these assets to a trust in their favor, and we therefore dismiss that phase of appellee's argument.

We can perceive no ground upon which these appellants can be denied the right to participate in the distribution of these assets and we regard their right so to participate as clearly established.

In view of the conclusion we have reached that this debt was a personal debt of George Skinner's, it is unnecessary to consider how far he might otherwise be liable for aiding Mrs. Turner in committing the breach of trust, which she did commit however unwittingly.

We shall reverse the decree, and remand the cause for further proceedings in conformity with this opinion.

*Decree reversed with costs to the appellant and cause remanded.*

(Decided March 3rd, 1898).