## MARGARET T. DUFFY

*vs.*

## BUENA VISTA ICE COMPANY.

*Surety: liability; not to be extended by implication; settlement
and satisfaction for further liability: does not
discharge surety from accrued liability.*

The liability of a surety is not to be extended by implication beyond the terms of his contract. pp. 277, 278

It is not sufficient that the surety may sustain no injury by a change in the contract, or that it may even be for his own benefit; he has a right to stand on the very terms of his contract, and if he does not assent to any variation of it, and a variation is made, the surety is released. p. 278

But while any attempt to discharge a principal and still retain the liability of the surety is ineffectual, a creditor may make a partial release which exonerates both the principal and the surety from any future liability, and yet retain the liability already accrued. p. 279

By a written contract, D. purchased from the B. V. Ice Co. its entire crop of ice then stored at B. V.; the payment for the ice shipped between the 1st and 15th of each month was to be paid on the 25th, and shipments between the 15th and 30th of each month, on the 10th of the month following. As part of the contract, D. executed, to the B. V. Ice Company, his bond, with his wife as surety, for the faithful performance of the contract and prompt payment, etc., at the price and times named therein. After part of the ice had been shipped, the B. C. Co., at the request of D., released him from his purchase as to the remainder; *held,* that the exemption of the purchaser from his duty to·receive and pay for the undelivered ice ope-

rated to that extent as a satisfaction, rather than a modification of the contractual liability of both the principal and surety, and did not operate to discharge the surety from the liability accrued for the payment of the ice already delivered.      p. 279

*Decided January 14th, 1914.*

Appeal from the Circuit Court of Baltimore City (DUFFY, J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BURKE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*J. Cookman Boyd* and *Peter J. Campbell,* for the appellant.

*William S. Bryan* and *Robert Biggs,* for the appellee.

URNER, J., delivered the opinion of the Court.

In March, 1902, William J. Duffy entered into a written contract with the Buena Vista Ice Company by which he purchased outright from the company its entire product of ice for that season then or thereafter stored in its icehouses at Buena Vista, Maryland.   The purchase price was $1.10 per ton, f. o. b. cars at Buena Vista, and it was stipulated that payment should be made as follows: "For all ice shipped between the first and fifteenth of each month on the 25th of said month; for all ice shipped between the fifteenth and thirtieth of each month on the 10th of the following month." It was further agreed that the purchaser should execute and deliver to the company his bond in the sum of five thousand dollars, with approved sureties, conditioned for the faithful performance of the contract and the prompt payment of the purchase money.   In pursuance of this provision a bond to the company was executed by Mr. Duffy and by his wife, the

present appellant. as surety, conditioned for the payment of "the purchase price for said ice when and as the said payments become due under the terms of the agreement," 'to which the bond explicitly referred.  In connection with this obligation Mrs. Duffy and her husband conveyed certain real estate of the wife to Robert Biggs, Esquire, by a deed which, while absolute in form, was shown by a separate instrument to be intended as security for the performance by Mr. Duffy of the terms and conditions of his contract with the Buena Vista Ice Company.  The deliveries of the ice purchased under the agreement began on March 14th and continued until October 25, 1902.  They appear to have been made upon current orders from Mr. Duffy and to have aggregated eighty-six hundred and thirty-seven and a fraction tons during the period indicated.  These shipments exhausted five of the eight houses in which the ice was stored, and as the transaction was proving unprofitable to Mr. Duffy the company verbally agreed, at his request, to "release" him from his purchase as to the remainder.  This agreement was made in October, 1902, about the time of the last delivery.  The amount of purchase money represented by the shipments mentioned aggregated $9,403.85 upon which payments were made which left owing to the company a balance of $2,722.50.  A decree for that sum was entered by the Court below in a proceeding for the enforcement of the lien created by the deed given by the appellant as security for the performance of her husband's contract.

The question of first importance in the case is raised by the appellant's contention that her liability as surety was discharged by the arrangement as to the undelivered ice to which we have referred.

In *Booth* v. *Irving Nat. Exc. Bank,* 116 Md. 672, the statement of MR. JUSTICE STORY as to a surety's responsibility was quoted with approval from the opinion in *Miller* v. *Stewart,* 9 Wheaton, 680, as follows: "Nothing can be clearer, both upon principle and authority, than the doctrine that the liability of a surety is not to be extended, by im-

plication, beyond the terms of his contract. To the extent and in the manner, and under the circumstances pointed out in his obligation, he is bound, and no further. It is not sufficient that he may sustain no injury by a change in the contract, or that it may even be for his benefit. He has a right to stand upon the very terms of his contract; and if he does not assent to any variation of it, and a variation is made, it is fatal."

In view of the rule thus defined, and it being apparent that the surety in this instance did not consent to any change in the contract, the only inquiry to be made as to this feature of the case is whether there has been any alteration, within the meaning of the rule, in the terms of the agreement upon which the liability here charged against the appellant is predicated. If such a modification was in fact made, it must be held to have operated as a release of the surety, without regard to the question as to whether its tendency would be to increase or to lessen the burden of her obligation.

The suretyship in this case was for the payment of the purchase price of the ice sold the principal *"when and as"* the periodical installments became due as prescribed by the agreement. The liability of the surety matured as to each installment at the time stipulated for its payment. The vendor company had made an absolute sale of the ice, and there was no restriction in the contract upon its right to sue the vendee and his surety for each payment of purchase money as it became due and as to which there was a default. All of the amounts for which the appellant is charged in this case were due and payable when the parties agreed to the retention by the vendor of the ice not yet delivered. The appellant's responsibility for the indebtedness which had thus accrued was fixed and unqualified. It rested upon transactions which were completely performed except as to the payments for which she was obligated. The subsequent understanding on account of which she claims to be released was in the nature of a re-sale of the undelivered ice to the vendor at the original contract price. There was nothing in

the agreement to prevent such a disposition. If Mr. Duffy had sold the remaining ice at its cost price to a third party, it would not be suggested that this ought to be regarded as a deviation from his contract of purchase or as affecting in any way the liability of his surety. If the relinquishment of the ice still in storage had been described by the parties as a *re-sale* to the Buena Vista Ice Company, it would clearly be consistent with, and not an alteration of, the original agreement. But treating the transaction as a "release," according to its characterization by the parties, it must be considered in the light of its real scope and effect. It amounted simply to an exemption of the principal and surety from the additional liability to which they would have been subjected if the remainder of the ice had been delivered. While an attempt to discharge a principal and at the same time preserve the liability of the surety with respect to the subject matter of the release is ineffectual for the latter purpose, there is no rule of law which prevents a creditor from making a partial release of liability which exonerates the surety as well as the principal. If the entire quantity of ice sold under the agreement had been delivered, and the vendor had then released both the obligated parties from the payments due on account of the later shipments, the surety could obviously not rely upon the release as a change in the contract and as a ground for her discharge from the indebtedness previously matured. Upon the same theory the exemption of the purchaser from his duty to receive and pay for the undelivered ice operated to that extent as a satisfaction, rather than as a modification, of the contractual liability of both principal and surety. Its effect was to relieve the debtor parties from further performance except as to the payments already due. With respect to the remaining executory features the contract was not altered but terminated. In our opinion the final transaction in question did not amount to a variation of the primary agreement within the meaning and effect of the rule invoked for the discharge of the surety from the liability here asserted.

In *Ducker* v. *Rapp*, 67 N. Y. 464, the suit was against the surety on a lease providing for the payment of the rent in monthly installments. An action had previously been instituted against the lessee himself for part of the rent included in the suit against the surety, and in the former action the lessor had entered into an agreement extending the time for payment of the rent there sought to be recovered. This was set up as a bar to the suit against the surety on the theory that there had been a change in terms of the contract with respect to which he had undertaken to be responsible. It was held that as to the payments affected by the extension of time the surety was discharged, but that his liability remained unimpaired as to the installments to which the agreement of extension did not apply. The Court said: "Each installment of rent was a separate and independent demand, and an extension of the time of payment of one would not impair the obligation of the surety as to the others." The same rule was applied to similar facts in *Coe* v. *Cassidy*, 72 N. Y. 133. These cases would be more closely analagous to the one before us if the extension agreements had related to rents falling due subsequently to the installments for which the sureties were being sued. But the same principle would be clearly applicable to either state of facts, and it is equally appropriate to the conditions shown by this record.

The case of *Driscoll* v. *Winters*, 122 Cal. 65, was cited as tending strongly to support the appellant's contention. The facts there considered were thus stated by the Court: "Winters contracted to purchase of Driscoll sixteen three-gallon cans of milk daily for the period of one year. He agreed to pay Driscoll therefor forty-five cents per can. Myers entered into a writing guaranteeing the performance of this contract upon the part of Winters. A short time after this guaranty was given, by the mutual consent of Winters and Driscoll, and without the knowledge of Myers, the contract was modified to the extent that Winters should purchase only thirteen cans of milk daily. Upon the expiration of the year, Winters failing to pay for the milk furnished, Driscoll brought this

action against both him and Myers for the agreed price of the milk furnished." It was held that the obligation of the principal had been altered in a material respect and that the surety was released. There are important and obvious distinctions between the case just cited and the one at bar. In the former case the claim against the surety accrued, if at all, at the end of a defined period, and was sought to be enforced with respect to a contract which in the meantime had been changed in its provisions without the surety's consent. In the present case the indebtedness charged against the surety was incurred in pursuance of the precise agreement to which her obligation referred, and the transaction alleged to be an alteration of the main contract was in reality consistent with its terms.

It would serve no useful purpose to discuss the various other cases cited in the argument. They are generally in accordance with the principle stated in *Miller* v. *Stewart,* and *Booth* v. *Irving National Exch. Bank, supra,* but the particular facts to which they refer do not appear to be analagous to those with which we are now concerned.

The record contains fifty-four exceptions relating to the admissibility of evidence. It would unduly extend this opinion to discuss them in detail. The disposition of the questions thus raised will, therefore, be confined to the statement of the conclusion we have reached that there is sufficient competent proof to establish the liability of the appellant to the extent of the indebtedness ascertained by the decree. The items of the plaintiff's claim as to which there was any uncertainty upon the evidence were disallowed by the Court below, in whose consideration of the case all reasonable doubts appear to have been resolved in favor of the surety.

*Decree affirmed, with costs.*