MAYOR AND CITY COUNCIL OF BALTIMORE, FOR USE OF LEHIGH STRUCTURAL STEEL COMPANY *v.* MARYLAND CASUALTY COMPANY

[No. 3, January Term, 1937.]

*Decided February 17th, 1937.*

The cause was argued before BOND, C. J., URNER, OFFUTT, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*George M. Brady,* with whom were *H. Winship Wheatley* and *Maloy, Brady & Yost* on the brief, for the appellant.

*Walter L. Clark,* with whom was *Roszel C. Thomsen* on the brief, for the appellee.

OFFUTT, J., delivered the opinion of the Court.

The P. C. Streett Engineering Company, herein called Streett, entered into a written contract with the Mayor and City Council of Baltimore (herein referred to as the City) to furnish the material, work, and labor for the erection of a public school building in that city. In connection with that contract it executed to the City a bond, with the Maryland Casualty Company as surety, conditioned (1) for the performance of the contract; (2) for the indemnification of the City against any loss arising from its wrongful or negligent acts in the performance of the contract; (3) for its failure to "promptly settle, pay and satisfy all claims, demands and suits made or instituted against the P. C. Streett Engineering Company by any and all persons, firms and/or corporations

for the non-payment of labor performed in and about the erection of the structure or the work to be done under the contract for which the said The P. C. Streett Engineering Company is liable; including any and all extra work that may become a part of the contract, and for all material furnished, installed, erected and incorporated in said structure or work for which the said The P. C. Streett Engineering Company is liable"; (4) for failure to replace improper work or material; and (5) for failure to protect the City against any loss caused by Streett's failure to properly perform the contract.

In the course of the work Streett made a contract with Armstrong & Parker, Inc., to furnish and install certain steel girders and frames, used in the construction of the school building. Armstrong & Parker in turn entered into a contract with the Lehigh Structural Steel Company to furnish the material. It did furnish the material, Streett paid Armstrong & Parker for the material furnished, but Armstrong & Parker failed to pay the Lehigh Structural Steel Company (herein called the Steel Company) in full. That company thereupon demanded that Streett pay it the unpaid balance due it under the contract with Armstrong & Parker. Streett refused, and the Steel Company then brought this action on the bond, on the theory that under the third condition of the bond Streett was obliged to pay it for the material furnished by it and incorporated in the building regardless of whether Armstrong & Parker had been paid.

The case was tried before the court sitting as a jury, and at the conclusion of the trial the court instructed itself "that by the language and covenants of the bond sued upon the defendant assumed no obligation to pay claims made by persons furnishing material to sub-contractors of the P. C. Streett Engineering Company and there being no evidence that the P. C. Streett Engineering Company is liable to the Plaintiff in this case, the Plaintiff is not entitled to recover and the verdict of the court, sitting as a jury, shall be for the defendant." Accordingly a verdict was returned for the defendant, the

Maryland Casualty Company, and from the judgment on that verdict this appeal was taken.

It is stipulated by the parties that the City paid Streett in full, that Streett paid Armstrong & Parker in full, but that Armstrong & Parker did not pay the Steel Company in full, that the material was furnished to Armstrong & Parker, Inc., by the Steel Company under a contract between them, and was actually used in the construction of the school building, but that Streett had no contractual relation with the Steel Company in respect to it, although it did know that the Steel Company furnished the material.

Upon those facts the appellant contends that the bonding company is liable to it (1) because under the wording of the bond it guaranteed that Streett Company would pay all demands for nonpayment of labor or material used in the construction of the building, and (2) that public policy requires that the bond shall be liable for all unpaid claims by persons furnishing labor or material used in building the school.

The appellee's contention is that by the unequivocal language of the bond the liability of the surety is limited to the payment of unpaid claims for labor and material furnished for the construction of the building under contracts with the principal contractor, Streett, that appellant's contract was not with Streett, that it is not liable under the wording of the bond except for Streett's defaults, and that by no principle of law can it be held to a performance which it did not assume.

The third condition of the bond, assuming that the other conditions have been met, is that "it shall be void if the Streett Company shall promptly settle, pay and satisfy all claims * * * for all material furnished, installed erected and incorporated in said structure or work for which the said The P. C. Streett Engineering Company is liable. * * *" It is suggested by the appellant that the words "is liable" relate to and qualify the entire contract, rather than the words "material furnished etc.," and is used only to identify the obligation of the surety.

The words are undoubtedly used to identify the obligation of the surety; that is why they were used; but the question is what is the obligation which they identify? Obviously it would appear to be to pay unpaid claims for material furnished for which Streett is liable, for that is the language of the bond. If it had meant that the surety would be liable for any claims for materials furnished in the performance of the contract, whether Streett was liable or not, it would have been simple enough to have said that. It was not necessary to use the words "is liable" to identify the obligation of the Streett Company, the contract did that, and if the obligors in the bond had meant to charge the surety with liability for the unpaid claims of persons furnishing material used in the general performance of the contract, they would have omitted the words "for which the said * * * Company is liable," as superfluous and needless. That conclusion is strengthened when the entire clause is considered. That part of it just quoted must be considered in connection with the formulation of that particular obligation, which is stated to be that the bond shall be void if the Streett Company "shall promptly settle, pay * * * all claims, demands and suits made or instituted against the said * * * Company * * * for the nonpayment of labor * * * for which the said * * * Company is liable, * * * and for all material furnished * * * for which the said The P. C. Streett Engineering Company is liable." "And for" is obviously referable to the payment by the Streett Company of claims for which it is liable, and since no claims, demand, or suit, could properly be instituted against it for materials furnished under a contract to which it was not a party, it seems clear enough that under the language of the bond the obligation of the surety does not extend to the claim in this case because the Streett Company is not liable therefor. The word "work" cannot be torn from its context and given a meaning palpably different from that intended by the obligors, in order to impose upon the surety a liability which neither the obligors nor the obligee contemplated. And yet that would be the result of the con-

struction suggested by the appellant. Certainly the language of the condition that the Streett Company "shall promptly settle * * * for all material * * * incorporated in said structure or work for which the said * * * Company is liable" does not refer to the liability of the Streett Company for the structure or work but to its liability for materials used in connection with the structure or work.

But it is suggested that public policy requires that the appellee be subjected to liability for unpaid claims of persons furnishing material incorporated in the building. There are several objections in the way of that construction of the bond. First, while a public policy which is definite, well-known, and clearly established may be invoked to destroy a contract, or possibly to aid in its interpretation, it cannot be invoked to alter or amend it. 13 C. J. 424 et seq., 9 C. J. 33. Again, there is no appearance in this case of a public policy which requires contractors, erecting public buildings in Baltimore City under construction contracts with the municipality, to pay third persons for material furnished subcontractors and used in constructing the buildings unless they have agreed to make such payments, nor is there any appearance of a public policy which requires the surety on such a contractor's bond to make such payments unless he has agreed to do so.

It seems axiomatic that persons are only bound by the contracts they make, and are not bound by contracts they do not make; that in interpreting contracts effect must be given to the intention of the parties, and that when the contract is written that intention must be found in the language employed, where it is clear and unambiguous. 13 C. J., Contracts, secs. 481-485; W. B. Saunders Co. v. Ducker, 116 Md. 474, 82 A. 154; Varnum v. Thurston, 17 Md. 470; Skinner v. Gaither, 87 Md. 330, 39 A. 876. For, as said in First Nat. Bank. v. McIntosh, etc. Co., 72 Kan. 603, 84 P. 535, 537: "Whenever parties themselves define the limits of their rights and obligations the compact controls, and there is no room for the application of a legal theory to the contrary." One may not be required to do

what he did not promise merely because what he did promise was not sufficient to meet the requirements of some real or supposed public policy.

It has been said time and again by judges and text-writers that there is no precise and certain definition of the phrase "public policy," that it may mean one thing today and another tomorrow, one thing in this place, and another in that. But while that is so, it is said in *Casualty Insurance Company's Case*, 82 Md. 535, 574, 34 A. 778, 785, "Speaking generally, the principle which holds that no one can lawfully do that which has a tendency to be injurious to the public, or against the public good, may be termed the policy of the law or public policy in relation to the administration of the law. 19 *Am. & Eng. Enc. Law*, 565." But in that case the court quoted with approval this extract from *Richardson v. Mellish*, 2 Bing, 229, 130 Eng. Rep. 303: "I, for one, protest, as my Lord has done, against arguing too strongly upon public policy; —it is a very unruly horse and when once you get astride it you never know where it will carry you. It may lead you from the sound law. It is never argued at all but when other points fail." In the same case Best, C. J., said: "I am not much disposed to yield to arguments of public policy: I think the courts of Westminster-hall (speaking with deference as an humble individual like myself ought to speak of the judgments of those who have gone before me) have gone much further than they were warranted in going in questions of policy: they have taken on themselves, sometimes, to decide doubtful questions of policy; and they are always in danger so doing, because courts of law look only at the particular case, and have not the means of bringing before them all those considerations which ought to enter into the judgment of those who decide on questions of policy."

It is said in 50 *C. J.* 858: "In a judicial sense, public policy does not mean simply sound policy, or good policy, but it means the policy of a state established for the public weal either by law, by courts, or by general consent. * * * The term has been said to mean the law of the state

as found declared in its constitution, its statutory enactments, and its judicial records, some courts going so far as to say that the public policy of a state must be determined by its constitutions, laws, and judicial decisions, and that they will not resort to other sources of information," and while that rule has been criticised as too narrow, *(Id.)* it is undoubtedly supported by the weight of authority. *Id.*, notes 58, 59.

Tested by those principles, there is no appearance in this case of any public policy which can be invoked to support the appellant's contention that the surety is liable for material furnished under a contract, to which it was not a party, to Armstrong & Parker, Inc., with whom it did contract and whom it paid.

The only statutes relating to the bonds required of persons contracting with the municipality for the construction of public buildings in Baltimore City are section 15 of the Baltimore City Charter, and Ordinance No. 52, City Code, art. 1, sec. 76. The only policy, if it can be called such, indicated by those enactments, is that successful bidders for construction contracts for city work shall execute and deliver a bond conditioned to "defend, indemnify and save harmless the Mayor and City Council of Baltimore against any suit or suits, loss, damage or expense, to which the said Mayor and City Council of Baltimore may be subjected by reason of any default or negligence want of skill, or care on the part of such contractor, his agent or employees, or of any sub-contractor, in or about the performance and execution of said work." City Code, art 1, sec. 76. There are no other statutes, or ordinances relating to such contracts or bonds, nor are there any judicial decisions, or other evidence of any other or broader policy.

It is also suggested that decisions of the federal courts construing the Heard Act, 40 U. S. Code Ann. sec. 270, and decisions of this court construing bonds executed to comply with the requirements of state statutes, support appellant's contention that public policy may be invoked to aid the interpretation of the bond in issue here. But

even if there was evidence of a definite public policy in this case, those decisions could not be given that effect. The Heard Act is a federal statute, and is therefore an expression of the policy of the federal government binding in all cases where the meaning and intent of the act may be considered, *Trimount Dredging Co. v. U. S. Fid. & Guar. Co.*, 166 Md. 556, 171 A. 700, 702. It is, however, wholly without significance as an index of the public policy of Baltimore City, and cases construing bonds executed in attempted compliance with its terms afford no help in construing bonds executed to insure the performance of construction contracts executed by Baltimore City, and that is also true of bonds executed to insure the performance of contracts made under state statutes.

The distinction between *United States, use of Hill v. American Surety Co.*, 200 U. S. 197, 26 S. Ct. 168, 50. L. Ed. 437, cited by appellant, and this, is that, there, there was no provision either in the statute or the bond limiting the right of recovery to persons furnishing labor or material directly to the principal contractor, while in this case there is such a limitation. *Loop Lumber Co. v. Van Loben Sels*, 173 Cal. 228, 159, P. 600.

While the analogies of the decisions of this court cited in support of the appellant's contention are rather remote, expressions may be found in them, which, if it was ever in doubt, support the principle that a bond is merely a contract which creates no obligation to which the obligors have not ascented.

*Hartford Accident & Indemnity Co. v. Knox Net & Twine Co.*, 150 Md. 40, 132 A. 261, turned on the construction of the words "pay all persons who have contracts directly with the principals for labor or materials." It was held that that language created an obligation on the part of the principal to pay persons furnishing it with material, and that one furnishing material to the principal could enforce that obligation by an action on the bond. The real point there was, not whether the principal was under an obligation to pay one directly furnishing material to it, but whether, conceding that, such person

could sue as a beneficiary on the bond to which he was not a party.

In *Baltimore v. Maryland Casualty Co.*, 146 Md. 508, 126 A. 880, 881, one Kirwan entered into a contract with the Mayor and City Council of Baltimore to install a heating and ventilating system in a school building, and in connection with that undertaking he executed to the city a bond conditioned to indemnify and save harmless the said municipality against any loss arising from any default or negligence on the part of the contractor in performing the contract. The plaintiffs, subcontractors, furnished material used by Kirwan in the performance of the contract. He failed to pay them and they brought suit on the bond. In denying liability the court there said: "As said by this court in *Southern Md. Bank v. Nat. Surety Co.*, 126 Md. at page 293,, 94 A. 917: 'Broad as is the construction now given to such undertakings, it has not been and can hardly be extended so as to reverse the rule that the liability of a surety upon his bond is dependent upon his covenants and agreements.'" In *State v. Nat. Surety Co.*, 148 Md. 221, 223, 128 A. 916, the point was whether the rent of a steam shovel was "material." It was held that it was not, and the court declined to rule upon the question presented here.

In *American Fidelity Co. v. State*, 128 Md. 50, 97, A. 12, 13, the plaintiff had furnished the principal contractor material for use under a state roads contract, and, upon its failure to pay therefor, it sued the surety on a bond given by the principal contractor, under a statutory provision that no such bond should be approved or accepted unless the obligors bound themselves "to the payment of all just debts for labor and material incurred by the bidder." A condition of the bond was that the contractor would "promptly pay in full all just debts for labor and materials incurred by such contractor in the construction and improvement of the road contracted for." It was held that, since the Legislature required that condition in the bond, it also intended to give to persons furnishing labor or material to the contractor a "right of

action," on claims against the contractor for labor and material so furnished him and for which he was liable. Since both the bond and the statute required the contractor to pay "all just debts for labor and material incurred by him," the conclusion reached in that case was consistent with the terms of both the bond and the statute. But there is nothing in it which permits the inference that the complainant could have had a cause of action against the surety on a debt not incurred by the contractor.

No support is found either in the conclusions or the reasoning in these cases for the proposition that the courts in construing a written instrument may disregard the plain meaning of its language so as to force upon the parties a fictitious intention, in order that the requirements of some real or imaginary public policy may be served. As stated by Chief Judge Bond for this court in *Trimount Dredging Co. v. U. S. Fid. & Guar. Co., supra:* "The surety's undertaking is confined to the terms of its contract, and is not amplified by equitable rights against its principal extraneous to that contract. The case seems to be that the general contractor, although it inserted in its own contract, and had inserted in its bond given to the government, the required clause for payment of labor and material furnished in the work, did not take the precaution to repeat the clause in this subcontract and bond, or take anything more from this subcontractor than the usual penal bond for completion of work. It is entirely with the general contractors for public work to protect themselves; the law does not supply the deficiency if they do not take bonds to cover their extended undertaking with the government. The surety is not required by law to go beyond the undertaking in the bond obtained."

It follows that the demurrer prayers of the defendant were properly granted, and the judgment appealed from will be affirmed.

*Judgment affirmed, with costs.*