HOSPITAL FOR THE WOMEN OF MARYLAND, FOR USE OF ROBERT S. GREEN, INC. *v.* UNITED STATES FIDELITY & GUARANTY CO.

ET AL.

[No. 21, January Term, 1940.]

616

*Decided March 5th, 1940.*

The cause was argued before BOND, C. J., OFFUTT, MITCHELL, JOHNSON, and DELAPLAINE, JJ.

*Albert A. Sapero,* with whom was *Bernard DeBoskey* on the brief, for the appellant.

*J. Kemp Bartlett, Jr.,* with whom were *Bartlett, Poe & Claggett* on the brief, for the United States Fidelity & Guaranty Company, appellee.

*Seymour O'Brien,* with whom were *Miles & O'Brien* on the brief, for the Cummins Construction Corporation, appellee.

MITCHELL, J., delivered the opinion of the Court.

This appeal is from a judgment for costs entered in the Court of Common Pleas of Baltimore City, after a demurrer interposed by the appellees to the declaration filed by the appellant had been sustained by the trial court, without leave to amend. The question presented, therefore, is whether the demurrer was properly sustained.

The declaration alleges that on September 22nd, 1938, Cummins Construction Corporation (herein designated contractor) entered into a written contract with Hospital for the Women of Maryland (herein designated owner), whereby the said contractor agreed to furnish all labor and materials required to make certain additions and alterations in connection with the hospital building of the owner, located in Baltimore City; that as a condition precedent to the execution of said contract it was provided that the contractor would execute a contract bond, with a surety, binding the contractor and surety to the faithful performance of the contract, and that in compliance with said condition the contractor, together with the United States Fidelity and Guaranty Company as surety, executed and delivered to the owner a bond conditioned: (a) For the performance of the contract; (b) for the indemnification of the owner for any expense incurred through the failure of the contractor to complete the work specified, or for any damages growing out of the carelessness of the contractor or its servants; (c) for any liability for the payment of wages due or material furnished said contractor; and (d) that the said obligors "shall pay all just debts for labor and

materials incurred through sub-contract or in any other manner, by or on behalf of the principal"—herein called contractor.

It is then alleged that the contractor, in the course of the performance of the contract, employed as sub-contractor the firm of Shipley and Dreisch, and that said sub-contractor contracted with Robert S. Green, Inc., the equitable plaintiff, for the furnishing of various materials and supplies necessary for the performance of said sub-contract, for which the sub-contractor has not paid the equitable plaintiff, although the materials and supplies were used in the construction of the building and alterations thereto of the owner, with the knowledge of the contractor; and, finally that demand for payment was made upon the sub-contractor; that the latter was unable to pay the equitable plaintiff for said materials and supplies, and that, accordingly, suit was brought against the said contractor and surety, they having refused to comply with a demand for payment upon each of them for the same.

The aforegoing allegations being admitted by the demurrer, it becomes necessary for us to construe the legal effect of that particular clause in the bond which provides that the obligors "shall pay all just debts for labor and materials incurred through sub-contract or in any other manner, by or on behalf of the principal." And for the purpose of such construction, it will be helpful to refer to some of the established principles which this court, as well as appellate courts of other jurisdictions, have followed in passing upon analogous questions.

Among these principles may be enumerated the following: (1) That since the advent of corporate bonding companies whose business it is to become surety upon bonds for a profit, the old doctrine that a surety is a favorite of the law and that a claim against him is *strictissimi juris* has been greatly minimized; (2) that the business of surety corporations being in all essentials practically that of insurers, the liability upon bonds executed by them has been liberally extended beyond that

to which sureties were formerly held, *Smith v. Turner,* 101 Md. 584, 61 A. 334; *Ætna Indemnity Co. v. Waters,* 110 Md. 673, 699, 73 A. 712; *Southern Maryland Bank v. Nat. Surety Co.,* 126 Md. 290, 94 A. 916; *American Fidelity Co. v. State,* 128 Md. 50, 97 A. 12; (3) that the liability of a surety upon his bond is dependent upon his covenants and agreements, or, in other words, that an ordinary coventional bond is a simple contract, *Hartford Accident & Indemnity Co. v. Net and Twine Co.,* 150 Md. 40, 132 A. 261; *Southern Maryland Bank v. Nat. Surety Co., supra; Duffy v. Buena Vista Ice Co.,* 122 Md. 275, 90 A. 53; *Booth v. Irving Nat. Exch. Bank,* 116 Md. 668, 82 A. 652; and (4) that, ordinarily, the cardinal rule in the interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention if it can be done consistently with legal principles.

In 12 *Am. Jur.* 745, sec. 226, it is said: "In the absence of a statute the only duty of the courts is to discover the meaning of a specific contract and to enforce it without a leaning in either direction when the parties stood on an equal footing and were free to do what they chose. * * * Contracts should neither, on the one hand, be so narrowly or technically interpreted as to frustrate their obvious design nor, on the other hand, be so loosely or inartifically interpreted as to relieve the obligor from a liability fairly within the scope or spirit of their terms." And in section 227 of the same authority it is stated: "Generally speaking, the cardinal rule in the interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention if it can be done consistently with legal principles. Whatever may be the inaccuracy of expression or the inaptness of the words used in the instrument in a legal view, if the intention of the parties can be clearly discovered, the court will give effect to it and construe the words accordingly. * * * The law presumes that the parties understood the import of their contract and that they had the intention which its terms manifest."

In the light of the aforegoing precepts, and bearing in mind that the contract bond in the instant case was executed for the purpose of guaranteeing the performance of a private contract, it is incumbent upon us to ascertain from the quoted sentence of the contract the intention of the parties thereto, if such intention can be gleaned from the language used in the instrument.

Obviously the stipulation as to the liability intended to be assumed by the terms of the instant bond could have been phrased in clearer language. But as was well said by the trial judge in his comment upon surety bonds in general, with special reference to the peculiar phraseology embodied in the bond now before us: "These bonds are presumably drawn by the best legal talent, and on their faces, like insurance policies, they seem to cover a wide field, but when it comes to relying upon them it is generally found that the language used is selected with great care, and with special reference to adjudications of courts of last resort, and the liability under them is oftentimes found to be of a definitely restricted variety. It seems to me in the instant case that effect must be given to the words 'incurred through sub-contractors, or in any manner, by or on behalf of the principal.' The 'by or in behalf of the principal' is a restrictive term. If the meaning and intent of the bond was to cover all just debts for labor and material incurred through subcontractors or in any other manner, as contended for by the plaintiff, the clause should have stopped there, but it added the definitely restrictive provision limiting the above to those incurred 'by or on behalf of the principal.' These words can not be rejected as surplusage. They restrict the obligation to debts for labor and material incurred by and on behalf of the principal. The debts in the present case were contracted by the sub-contractor, or by and on behalf of himself as subcontractor, and not 'by or on behalf of the principal.' "

In the case of *Hartford Accident Co. v. Net and Twine Co., supra,* the bond considered by the court was, as in the instant case, a conventional bond and therefore free

from statutory conditions. And while the major point decided in that case was not whether the principal was under an obligation to pay one directly furnishing material to it, but, conceding such liability, whether such person could sue as a beneficiary on a bond to which he was not a party, this court construed the phrase, "pay all persons who have contracts directly with the principals for labor or materials," to mean that only those furnishing material directly to the principals could enforce payment therefor by an action on the bond, the converse of that conclusion being that third parties, dealing with a sub-contractor of the principals and having no direct contract with the latter, could not maintain an action on the bond for labor and materials furnished, because of the terms of the above quoted paragraph.

On the other hand, in the recent case of *Baltimore v. Maryland Casualty Co.*, 171 Md. 667, 190 A. 250, 252, the contract was for the construction of a school building for the City of Baltimore, and the contractor executed a bond with the appellee company as surety, the conditions, in accordance with the provisions of a city ordinance, being that the obligors of the bond would promptly settle, pay, and satisfy all claims, demands and suits made or instituted against the contractor, for the non-payment of labor performed and material furnished, in connection with the building, for which the said contractor "is liable." In the course of the work, the contractor made a contract with a sub-contractor to furnish and install certain steel girders and frames used in the construction of the building. The sub-contractor in turn entered into a contract with the equitable plaintiff to furnish the material; the latter furnished the same, and the contractor paid the sub-contractor therefor. Upon the failure of the sub-contractor to pay the equitable plaintiff in full, demand was made by the latter upon the contractor for the payment of the unpaid balance due it under its contract with the sub-contractor. The contractor having refused to comply with that demand, suit was accordingly brought by the materialman upon the

contract bond, and upon appeal from a judgment for the defendant, this court, in construing the effect of the words "is liable" as employed in the bond, said: "The words are undoubtedly used to identify the obligation of the surety; that is why they were used; but the question is what is the obligation which they identify. Obviously it would appear to be to pay unpaid claims for material furnished for which Streett [the contractor] is liable, for that is the language of the bond. If it had meant that the surety would be liable for any claims for materials furnished in the performance of the contract, whether Streett was liable or not, it would have been simple enough to have said that. It was not necessary to use the words 'is liable' to identify the obligation of the Streett Company, the contract did that, and if the obligors in the bond had meant to charge the surety with liability for the unpaid claims of persons furnishing material used in the general performance of the contract, they would have omitted the words 'for which the said * * * Company is liable,' as superfluous and needless. That conclusion is strengthened when the entire clause is considered."

By analogy, it would seem that the term "by or on behalf of the principal," as employed in the bond now before us, is synonymous with the term "is liable" as employed in the above cited case. In other words, in effect, they both limit the liability of the contractor and surety to the payment of obligations for labor and material used in the construction, incurred through transactions traceable to the direct authorization of the principal. Furthermore, they contemplate transactions distinguishable from transactions with those who, while themselves contracting directly with the principal, are thereby protected by the surety bond, nevertheless, in independent capacities, in their own name; and upon the faith of their own credit or responsibility, enter into contracts with third parties involving the supply of labor and material for the performance of their sub-contract with the principal or original contractor, whose fidelity alone is guaranteed by the surety.

It is urged by the appellant that the term, "incurred through sub-contract or in any other manner," broadens the liability of the contractor and surety to the protection of all laborers and materialmen who furnish labor and supplies, respectively, in the course of the performance of the contract. But with that contention we do not agree, regardless of the merit and justice of claims of the above character. The unbending rule applicable to the construction of contracts is that whenever the parties to the same define the limits of their rights and obligations, the compact controls, and no discretion is lodged in the court to weigh and apply equities in conflict with that compact.

We are not unmindful that the weight of authority is to the effect that a contractor's bond should be liberally construed in favor of laborers and materialmen for whose benefit a bond is ostensibly executed, as against a paid surety company. And, as has been indicated, the weight of authority also supports the theory that one furnishing labor or materials, in the course of the construction of a building, may recover on the contractor's bond to the owner, in cases where the bond contains a condition for the former's benefit and is intended for his protection, although the owner is the only obligee named therein, and there is no express provision that the obligation shall inure to the benefit of laborers or materialmen, or that they may avail themselves of the security thereof. *Hartford Accident Co. v. Net and Twine Co.*, *supra*, as stated, affirms that principle, in so far as this state is concerned, although there is much authority to the contrary in other jurisdictions. 12 *Am. Jur.* 825, sec. 277; 77 *A. L. R.*, page 53 *et seq.*, and 118 *A. L. R.*, page 64 *et seq.* (annotations, Bond of Private Contractor) ; 38 Yale Law Journal, p. 1147. Nevertheless, in construing the language of the bond, effect must be given to the intention of the parties, if that intention can be found from the language employed, notwithstanding less ambiguous language might have been employed. 13 *C. J.* 520-525 (*Contracts*) secs. 481-485; *Saunders Co. v. Ducker,* 116 Md.

474, 82 A. 154, Ann. Cas. 1913C, 817; *Varnum v. Thruston*, 17 Md. 470; *Skinner v. Gaither,* 87 Md. 330, 39 A. 876; *First Nat. Bank v. McIntosh Co.*, 72 Kan. 603, 84 P. 535; *Baltimore v. Maryland Casualty Co., supra; Trimount Dredging Co. v. U. S. Fid. & Guar. Co.*, 166 Md. 556, 171 A. 700, 702. In the latter case it was said: "The surety's undertaking is confined to the terms of its contract, and is not amplified by equitable rights against its principal extraneous to that contract."

It follows that the demurrer to the declaration was properly sustained, and the judgment appealed from will be affirmed.

*Judgment affirmed, with costs.*