HANLEY, RECEIVER *v.* MULLENEAUX

[No. 93, October Term, 1948.]

594

*Decided March 30, 1949.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*William S. Wilson, Jr.* for the appellant.

*Maurice J. Pressman,* with whom was *Michael F. Freedman* on the brief, for the appellee.

MARBURY, C. J., delivered the opinion of the Court.

The question presented on this appeal is whether a claimant, under the Workmen's Compensation Law, Code Supp. 1947, art. 101, § 1 et seq., can, with the approval of the State Industrial Accident Commission, settle for a lump sum his claim against his employer, without thereby releasing the insurer of the employer from further liability. The Commission decided that he could, and its action was affirmed by the Superior Court of Baltimore City. The receiver of the insurer appeals.

The appellee, while employed by the Empire Window Cleaning Company, Inc., was injured by a fall on May 22, 1947. He filed a claim for compensation, which was not contested by his employer or the latter's insurer, the Keystone Mutual Casualty Company. On June 24, 1947 the Commission passed an order awarding him compensation for temporary total disability at the rate of $23 a week, accounting from May 26, 1947. While such compensation was being paid by the insurer, the latter went into receivership. Thereafter, the employer paid, on account of the temporary total disability award, the sum of $200, petitioned the Commission to reopen the case, and at the same time appealed from the order of June 24, 1947. A hearing on the petition to reopen was set by the Commission for September 23, 1947, but on that date, the appellee and the employer entered into a written agreement by which, in consideration of the payment by the employer of $500, the appellee would release the employer from any further claims resulting from his injury. This settlement agreement was submitted to the Commission, and approved by it on September 23, 1947, and the employer was ordered to pay the agreed sum to the appellee's physician, to his attorneys and to the appellee himself in a division agreed upon and set

out in the order. This order was passed after a hearing at which the appellee testified that he understood that if the settlement was approved, any claim he might have against his employer would be closed forever, but that he also understood that he might still have a claim against the Receiver of the Insurance Company for his disability. No reservation of such a right was written in the agreement and release, or in the order of the Commission. The employer paid the lump sum settlement in accordance with the order of the Commission.

Immediately thereafter, on October 1, 1947, the appellee requested the Commission to set the case for a hearing against the receiver of the insurer to determine the nature and extent of his disability. This hearing was held on January 28, 1948, at which time all parties were present. The Commission found that appellee's temporary total disability terminated on July 14, 1947, but allowed compensation against the insurer for permanent partial disability at the rate of $20 per week during such disability not to exceed $5000, subject however to a credit of $500 for the amount paid by the employer under the approved settlement of September 23, 1947. This compensation was to account from July 15, 1947. This final order was passed on February 6, 1948, and was the one appealed to the Superior Court, and there heard, by agreement, by the court sitting without a jury upon the transcript of record of the Commission. From the action of the court affirming the order of the Commission the receiver of the insurer appeals here.

By Section 39 of Article 101 of the Annotated Code, a claimant, after filing his claim, may, with the approval of the Commission "enter into an agreement with the employer *or* insurer of such employer providing for a final compromise and settlement of *any and all* claims which the said employee * * * might then or thereafter have under the provisions of this Article, *upon such terms and conditions as the Commission shall, in its discretion, deem proper.* Any such settlement when approved by the Commission shall be binding upon all par-

ties thereto, and no such settlement shall be effective unless approved by the Commission." (Italics supplied.) The appellant claims that under these provisions the only settlement which the Commission could approve was one of all claims against all parties.

We are unable to accept the narrow view that any settlement approved by the Commission must be of all claims then existing or subsequently arising against all parties. The purpose of permitting lump sum settlements is to benefit claimants under special circumstances, and the requirement of Commission approval is to prevent advantage being taken of a claimant's possible ignorance of his rights or of his best interests. One purpose of the enactment of the Workmen's Compensation Act was to relieve the State and the taxpayers from the necessity of caring for those injured in extra-hazardous work (Preamble to Chap. 800, Acts 1914), and the achievement of this purpose, as well as the proper care of those so injured, made it necessary to prevent the parties from making their own settlements without supervision by an agency of the State. There is no reason to require that all such settlements must be of all claims against both employer and insurer, and we do not think the wording of the statute makes such a requirement. It may be in the interest of a claimant (and of the State) to get a lump sum from an employer at a time when the latter has the money to pay it, without giving up his full claim against insurer which is temporarily but perhaps not permanently uncollectible. We think a settlement may be approved with an "employer or insurer", as provided by the statute, and that such settlement is not required to be with both. Of course, the claimant cannot collect the same claim from both employer and insurer. He cannot recover a double award, but that is not attempted in the present case.

The appellant suggests also that the agreement and release of appellee put an end to further claims of the appellee against appellant, because such a release must be construed in the light of the general legal doctrine

that the release of a principal releases a surety. *Blackburn v. Beall,* 21 Md. 208, 239; *Oberndorff v. Union Bank,* 31 Md. 126, 1 Am. Rep. 31; *Booth v. Irving Nat. Exch. Bank,* 116 Md. 668, 672, 82 A. 652; *Duffy v. Buena Vista Ice Co.,* 122 Md. 275, 90 A. 53. He argues that the testimony of the appellee consists of self-serving declarations, and that these are repugnant to the legal effect and operation of the release and agreement executed by him and approved at his instance by the Commission. *Gunther v. Lee,* 45 Md. 60, 24 Am. Rep. 504; *Lanasa v. Beggs,* 159 Md. 311, 151 A. 21. Since the effect of the approved agreement is to release the employer, the appellant claims that his insurance company is released from its suretyship, and no further payments can be required from it, since its obligation is the same as that of the employer.

The basis for the common law doctrine relied on by the appellant is now embodied in Article 8, Section 5 of the Code and is stated by Chancellor Bland in the well-known case of *Clagett v. Salmon,* 5 Gill & J. 314, 326, 327 in the following words "It is universally admitted * * * that if the surety pays the whole debt, he has a right to be put into the place of the creditor as to all his remedies for the recovery of the debt * * * And therefore, if the creditor * * * has by express agreement enlarged the day of payment; or has by his acts increased the peril of the surety; or has parted with any of his securities; or has in any other manner altered or impaired the obligation of the implied contract * * * then the surety is discharged; upon the ground that all such acts are against the faith of the implied contract, by virtue of which the surety had precisely the same right the creditor had and must be allowed to take his place in all respects * * *." In the same opinion Chancellor Bland stated, 5 Gill & J. at pages 332, 333, that if the creditor extends time to the debtor, reserving all of his remedies against him, although such an agreement might not in many cases be of benefit to the debtor "since it leaves him entirely at the mercy of the surety; yet if the parties do so expressly contract, the surety can have

no ground to complain　*　*　*　and, therefore, he cannot be discharged". The Chancellor found that the surety was not discharged by anything that had been done in that case by the creditors, because their actions did not prevent him from pursuing his full remedy against the debtor. The Court of Appeals affirmed the Chancellor and in so doing discussed at some length the theory upon which a surety is released when creditors make some new arrangement with the debtor. A number of cases from other jurisdictions were referred to and quoted from. Among them was *King v. Baldwin*, 2 Johns Ch., N. Y., 554, 559, 560, in which Chancellor Kent said of the rights of a surety, "On paying the debt, he is entitled to the creditor's place by substitution, and if the creditor by agreement with the principal debtor, without the surety's consent has disabled himself from suing, when he would otherwise have been entitled to sue under the original contract, or has deprived the surety, on his paying the debt, from having immediate recourse to his principal, the contract is varied to his prejudice, and he is consequently discharged. This is the true principle to be extracted from the cases." Judge Stephen, who wrote the opinion for this Court, added to this quotation, "It is then upon the principle, that the contract of the surety is changed, or varied to his prejudice, and without his consent, that the surety is discharged." In the case of *Yates v. Donaldson,* 5 Md. 389, 61 Am. Dec. 283, the court referred to *Clagett v. Salmon, supra,* and said, "*　*　* Time given to a principal will discharge the surety because it places him in a new situation in reference to the principal debtor."

We have referred to these two early Maryland cases in order to show the foundation of the common law doctrine for which the appellant contends. *Clagett v. Salmon, supra,* was also referred to for the statement of the rule in *Asbell v. Marshall Building & Loan Ass'n,* 156 Md. 106, at page 111, 143 A. 715. The strictness of the rule has been much modified in recent years, and the tendency in many jurisdictions now is to give effect to

what the parties actually intend when a debtor is favored by an agreement, but all rights are specifically reserved against a surety. See *Re-statement Law of Security,* Sec. 122, (b) and *Comment, Brown v. Vermont Mutual Fire Ins. Co.,* 83 Vt. 161, 74 A. 1061, 29 L. R. A., N. S. 698; 53 A. L. R. 1438. It is not necessary for us in this case to discuss the question how far the common law rule has been or should be relaxed, because it is not a question here of relaxation of the rule, but a question of whether the rule applies at all to such a case as this.

The relation between an employer and his insurer under the Workmen's Compensation Act differs from that between an ordinary principal and his surety. There is no subrogation to the rights of the employee against the employer in Workmen's Compensation insurance. The insurance carrier cannot recover from the employer the amount of compensation it pays the latter's employees who are covered by its policy. Both employer and insurer is liable to the employer for the amounts the latter may have paid to the employee, but there is no corresponding liability on the part of the employer to the insurer. The insurance carrier insures the payments awarded against the employer, and under its contract, made in pursuance of the statute, it is directly liable to the employee for these amounts.

It is true that this Court said in an early discussion of the Workmen's Compensation Act that, "The insurance carrier occupies the position of a surety for the employer, to secure the fulfillment of any liability which may be determined to have arisen." *Brenner v. Brenner,* 127 Md. 189, 194, 96 A. 287, 289. And in *Owners' Realty Co. v. Bailey,* 157 Md. 141, 145 A. 354, it was stated, "The carrying of insurance for a payment of money would, we think, ordinarily imply an original, primary liability on the employer". But in *United States Fidelity & Guaranty Co. v. Taylor,* 132 Md. 511, 104 A. 171, 173, where an insurer was allowed to recover from an employer certain payments made by it, under an award of the Commission, for the death of an employee not cov-

ered by its insurance policy, the court went somewhat fully into the situation of an insurance carrier, saying "There are two distinct obligations upon the insurance company—one to secure payment of the compensation to the employee, and the other to indemnify the employer against loss for the liability imposed upon him * * *". And in Article 101, Section 18, it is provided that every insurance policy issued under the Workmen's Compensation Act shall contain a provision "setting forth the right" of the Commission to enforce for the benefit of the person entitled to compensation the liability of the insurance carrier for the payment of such compensation.

In the case before us, the surety has lost none of its rights against the employer. It has probably been benefited, rather than prejudiced, although this factor would not enter in the case if any of its rights had been altered or changed. *Duffy v. Buena Vista Ice Co., supra.* Since the reason for the applicaton of the old common law rule does not apply to it, we can see no basis for extending that rule in the face of the realities of the situation.

The motion of appellee to dismiss the appeal from the State Industrial Accident Commission to the Superior Court was properly denied, as the appellant had the right to have the question of law, raised by it, decided, but the order of the Court affirming the decision of the Commission was correct and will be affirmed here.

*Order affirmed, with costs.*