## HARTFORD ACCIDENT AND INDEMNITY COMPANY *v.* W. & J. KNOX NET AND TWINE COMPANY, For the Use of Maurice H. Dauplaise et al.

*Contractor's Bond—Who Entitle to Benefit—Persons Furnishing Labor and Materials.*

The rule that a surety is the favorite of the law does not apply to sureties who engage in the bonding business for a profit.

pp. 43, 46

Without regard to any statute, a contractor's bond can be so drawn as to cover the claims of those furnishing labor and material, and, when it is so drawn, suit thereon can be maintained by the obligee for the use of those with such claims.

pp. 44-46

The question whether a contractor's bond covers claims for labor and materials is one of intention, to be determined by the meaning of the covenants and conditions of the bond.      p. 46

A contractors' bond to "faithfully perform the contract * * * and satisfy all claims and demands incurred for the same" and "indemnify and save harmless the owners from all cost and damage * * * by reason of failure so to do" and reimburse the owners all outlay and expense incurred in making good any default, and "pay all persons who have contracts directly with the principals for labor and materials," *held* to cover not only any loss sustained by the owners, but also any loss suffered by those who furnished labor or materials directly to the principals, by reason of non-payment therefor.                    pp. 43-48

*Decided January 29th, 1926.*

Appeal from the Baltimore City Court (ULMAN, J.).

Action by the W. & J. Knox Net and Twine Company, for the use of Maurice H. Dauplaise and Richard F. Hollyday, co-partners, trading as Maurice H. Dauplaise, against the Hartford Accident & Indemnity Company. From a judgment for plaintiff, defendant appeals. Affirmed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*Edward D. Marlin,* for the appellant.

*Edward A. Ferrari,* for the appellee.

WALSH, J., delivered the opinion of the Court.

The sole question presented by this appeal is whether or not the obligation of the bond sued on covers the claims of a subcontractor, who is not a party to the bond, for labor and materials furnished the principal contractor, in the absence of any loss resulting to the obligee of the bond because of the failure of the principal contractor to pay the subcontractor.

The amended declaration, which is the only one contained in the record in this court, alleges that on March 29th, 1923, the Sarles Construction Company, a copartnership, entered into a contract with the plaintiff, the W. & J. Knox Net and Twine Company, for the erection of certain buildings in

Baltimore City, and on April 16th, 1923, the construction company, as principal, executed and delivered to the plaintiff, as obligee or owner, a bond of completion in the sum of $68,806, on which bond the defendant, the Hartford Accident and Indemnity Company, was surety. The bond, which was set out in full in the amended declaration, was conditioned as follows:

"Now, therefore, the condition of this obligation is such that if the principals shall faithfully perform the contract on their part, and satisfy all claims and demands, incurred for the same, and shall fully indemnify and save harmless the owners from all costs and damage which they may suffer by reason of failure so to do, and shall fully reimburse and repay the owners all outlay and expense which the owners may incur in making good any such default and shall pay all persons who have contracts directly with the principals for labor or materials, then this obligation shall be null and void; otherwise it shall remain in force and effect."

It was further alleged in the amended declaration that on April 14th, 1923, the equitable plaintiffs, Maurice H. Dauplaise, contracted with the construction company to furnish certain labor and material for use on the buildings being erected for the plaintiff, that the construction company failed to pay the full amount due for this labor and material, that the equitable plaintiffs had been unable to collect it from them, and that the defendant had also declined to pay the balance due, though demand had been made upon it as surety on the above-mentioned bond. Suit was brought on the bond in the name of the W. & J. Knox Net and Twine Company, the obligee named in the bond, for the use of Maurice H. Dauplaise and Richard F. Hollyday, partners, as equitable plaintiffs, on the theory that the provision requiring the payment of "all persons who have contracts directly with the principals for labor or materials" entitled the equitable plaintiffs to recover under the bond.

The defendant surety company demurred to the amended declaration, contending that the bond only covered the obligee or owner, the W. & J. Knox Net and Twine Company, and that in the absence of any loss to the obligee or owner resulting from the failure of the construction company to pay the equitable plaintiffs they cannot recover on the bond. The lower court overruled the demurrer, and upon the defendant declining to plead further, judgment was rendered in favor of the plaintiff for the sum of $4,028.95, the balance found to be due the equitable plaintiffs for labor and material furnished by them, and from this judgment the defendant has appealed.

We have found no case in Maryland in which the precise question here presented has been determined, and as the decisions elsewhere are not only in conflict as to the principles to be applied, but are also based on bonds couched in language which differs in a greater or less degree from that used in the bond in this case, we consider it best to set forth certain principles which this Court has previously established in dealing with the question of the liability of sureties on bonds, and then to endeavor to interpret the provisions of the bond under discussion in the light of those principles.

In the case of the *American Fidelity Co. v. State,* 128 Md. 50, 56, the Court said: "Since the organization of corporate bonding companies, whose business it is to become surety upon bonds for a profit, the old doctrine that a surety is a favorite of the law, and that a claim against him is *strictissimi juris* has been very greatly minimized. And the business of these corporations is in all essentials practically that of an insurer and the liability upon their bonds has been very greatly extended beyond that to which sureties were formerly bound." Citing *Smith v. Turner,* 101 Md. 584; *Aetna Indem. Co. v. Waters,* 110 Md. 699; *South. Md. Bank v. Nat. Surety Co.,* 126 Md. 290.

This Court has also decided on numerous occasions that those furnishing labor and material could recover on a contractor's bond, where there was a statute or ordinance requir-

ing that they should be protected by the bond. *South. Md. Bank v. Nat. Surety Co., supra; American Fidelity Co. v. State,* 135 Md. 326; *Baltimore v. Casualty Co.,* 146 Md. 508, 513; *American Fidelity Co. v. State,* 128 Md. 50. In the case last cited the Court quoted with approval the following statement found in an exhaustive note to *Knight & Jellison Co. v. Castle,* 27 L. R. A. (N. S.) 573: "An ancient general principle denies an action for the breach of a contract to one who neither made it nor has succeeded to the interest of the one who did make it, notwithstanding he had sustained a damage by the breach, or would have been substantially benefited by the performance of such contract. In later times that general principle became subject to an exception now widely recognized and well established, viz., that a third person for whose benefit others make a contract may in certain circumstances recover upon it against the party to it who defaults in performing the beneficial covenant. The courts have had occasion to act so frequently upon this exception that it has acquired the force of an independent rule of law. Cases arising upon beneficial contracts which have required the courts to consider and apply this exception-generated rule have been very numerous and exceedingly varied in character, and the judicial determinations made in them have been discordant and conflicting to a high degree. The cases in which a subcontractor, laborer or materialman has sought recovery upon the contractor's bond or against his sureties, upon the ground that the obligation was entered into for his benefit, constitute a large and important group among the multitude. In all of them the rule has been referred to and in some of them it has been applied. In none has it been denied that the rule applies to this class of cases, but only that particular cases do not fall within its operation." And in discussing this note the Court said: "And it is clear from a study of the cases there cited, and from others that the weight of authority (holds) that since the contractor's bond is given not only for the protection of the state under the contract, but equally

for the protection of the laborers and materialmen, that such have a right of action irrespective of whether the express language of the bond or act gives it to them." And it should be observed in this connection that the language of the bonds sued on in many of the cases just cited is certainly not more specific regarding the payment of those furnishing labor and material than is the language in the bond now before us.

The foregoing cases also seem to sanction the bringing of a suit on such a bond in the name of the obligee, for the use of those furnishing labor and material. See also on this point *Seigman v. Hoffacker,* 57 Md. 321, 325.

And it has long been established in this state that the liability of a surety upon his bond is dependent upon his covenants and agreements, or, in other words, that an ordinary bond is simply a contract. *South. Md. Bank v. Nat. Surety Co., supra; Baltimore v. Casualty Co., supra; Duffy v. Buena Vista Ice Co.,* 122 Md. 275; *Booth v. Bank,* 116 Md. 669; *Williams v. U. S. Fidelity Co.,* 105 Md. 492; *Union Ins. Co. v. U. S. Fid. Co.,* 99 Md. 430; *Credit Indemnity Co. v. Cassard,* 83 Md. 277. And finally, it was intimated in the recent case of *Baltimore v. Casualty Co., supra,* that there could be a recovery by materialmen, where the bond was so conditioned, regardless of any statute or ordinance, the Court saying, at page 512: "In most, at least, of the cases where material men have been permitted to recover on such a bond, either a statute or ordinance has required that they should be protected by the bond, or the bond itself has contained such a condition."

It is, of course, true that in all the cases just considered the bonds were statutory bonds, but this does not render the principles announced in them inapplicable to the present case. As was well said in the course of his opinion by the learned judge below: "The court is not unmindful of the fact that the bond in this case is a conventional, and not a statutory bond. But while it is true that most of the cases—and all of the Maryland cases—in which materialmen have been allowed to recover have arisen out of statu-

tory bonds, there is no distinction in principle between the two classes of instruments. The question is simply one of contractual intention; and that it is so our Court of Appeals has repeatedly stated."

The authorities heretofore cited would seem to establish that in Maryland the old rule that a surety is a favorite of the law no longer applies to sureties who engage in the bonding business for a profit; that without regard to any statute, a contractor's bond can be so drawn as to cover the claims of those furnishing labor and material, and when so drawn a suit on it can be maintained by the obligee for the use of those with such claims; and that the question of whether or not such a bond does cover such claims is one of intention to be determined by the meaning of the covenants and conditions of the bond.

Applying these principles to the bond involved in this case, it is difficult to escape the conclusion that it was meant to cover the claims of those furnishing labor and material, where such persons had contracts directly with the principals or contractors. This is what the bond states, and reading the whole obligation of the bond merely adds emphasis to this construction. This obligation in part is that "the principals shall faithfully perform the contract on their part, and satisfy all claims and demands incurred for the same, and shall fully indemnify and save harmless the owners from all cost and damage which they may suffer by reason of failure so to do and shall fully reimburse and repay the owners all outlay and expense which the owners may incur in making good any such default. * * *" This language is undoubtedly sufficient to protect the owners or obligees under the bond against the claims of any one furnishing labor and material. The principals must "satisfy all claims and demands, incurred for the same," and must indemnify and pay the owners for any loss or expense they may be put to by reason of the principals' failure to "satisfy all claims and demands incurred for the same." It certainly cannot be successfully contended that, under this lan-

guage, the owners could not recover from the surety any money they were required to pay out for labor and material by reason of the principals' failure to pay for them. And if this language would protect the owners against such claims, what necessity exists for adding the words, "and shall pay all persons who have contracts directly with the principals for labor or materials"?

It is a cardinal rule of construction that, whenever possible, all the terms of a written instrument will be given effect, and if this rule is applied to the bond now under discussion, it would seem to require treating the provision just quoted as something more than mere repetition and surplusage, and we are of the opinion that it should be so treated. It follows the provision requiring the indemnity of and payment to the owners for any loss they may sustain, and there is nothing in the language used to indicate that it was intended to refer to loss by the owners. In addition to this the provision does not apply to all those who may furnish labor and material; it is specifically limited to those "who have contracts directly with the principals for labor or materials." It would accordingly follow that a laborer employed by a subcontractor, or a person furnishing material to a subcontractor, would not, under this provision, have any rights against the surety. Just why this limitation was imposed does not appear, but it serves to distinguish this case in some degree from those in which the bond provides generally for the payment of labor and material, and would seem to indicate that the parties attached some meaning to this provision apart from the general provisions of the bond requiring the saving from loss of the owners or obligees. It is possible that the building contract between the principals and the owners might throw some light on this question, but as the building contract is not set out in the amended declaration, we are deprived of the advantage of considering it. We will not attempt, nor is there any need, to fix definitely the reason or reasons which prompted the parties to the bond to insert this provision. It

may be, as suggested in the opinion of the court below, that it was to some extent prompted by the knowledge that materialmen have no right to file mechanics' liens in Baltimore City, and so was designed to protect them against loss for the material furnished and the labor expended in assembling and delivering it. Or it may have been intended to protect the owners themselves against the annoyance which the average man would experience from the knowledge that there were unpaid bills for labor and material furnished him, even if he could not be compelled to pay the bills. But, whatever the reasons underlying the matter may be, it seems clear to us that the condition of the bond in this case, when fairly interpreted, undertakes to cover not only any loss sustained by the owners, but also any loss suffered by those who furnished labor or materials directly to the principals, and, in our opinion, such an interpretation, representing as it does the expressed intention of the parties, renders the surety liable to those who thus furnished such labor or materials.

We are aware that there are decisions in other states at variance with the reasoning here employed, but on the other hand there are a large number of authorities which support it. *McDonald v. O'Shea,* 58 Wash. 169; *Royal Indemnity Co. v. Northern Granite and Stone Co.,* 100 Ohio St. 373, 12 A. L. R. 378, 382; *Ochs v. M. J. Carnahan Co.,* 42 Ind. App. 160; *Baker v. Bryan,* 64 Iowa, 561; *R. Conner Co. v. Aetna Indemnity Co.,* 136 Wis. 13; *Gastonia v. McEntee-Peterson Engineering Co.,* 131 N. C. 363; *King v. Murphy,* 49 Neb. 670; *Devers v. Howard,* 144 Mo. 671, 21 R. C. L. 985, sec. 35, and cases cited in the note to *Knight & Jellison Co. v. Castle, supra.*

In none of the cases cited or read by us have we found a bond which contained the precise language employed in this one, but in the view which we take of the matter, this language, taken in connection with the above-mentioned decisions of this and other courts, renders the surety liable in

this case for labor and material furnished directly to the principals.

Finding no error in the action of the learned court below, the judgment appealed from will be affirmed.

> *Judgment affirmed, the appellant to pay the costs.*

---

BOND, C. J., filed the following dissenting opinion, in which PARKE, J., concurred.

My conclusion is opposed to that of the majority of the court. In this state we have adopted the rule that suit may be brought on a contract by one who, although not a party to it, is named in it as beneficiary. We have adopted what has been called the New York rule, the majority rule, rather than the Massachusetts or the English rule on the subject. *Anson on Contracts* (2nd Amer. ed.), p. 284; *Small v. Schaefer,* 24 Md. 143. But the rule has not been that all stipulations between two parties for payment of a third are enforceable by that third. Some have been so enforceable, and some have not, according, in each case, as it might or might not be inferred from the particular contract in hand that the contracting parties intended to make the third party the beneficiary of their contract. "It is not every promise made by one to another from the performance of which a benefit may ensue to a third which gives a right of action to such third person, he being neither privy to the contract, nor to the consideration. The contract must be made for his benefit as its object, and he must be the party intended to be benefited." *Simson v. Brown,* 68 N. Y. 355, 361. And it seems to me that we are slighting this distinction in holding the third party entitled to sue on the bond given the owner in this case, to enforce the stipulation that the surety "shall pay all persons who have contracts directly with the principals for labor and materials." I see nothing in it to support the inference of intention to benefit the

third party, which would, under the principle referred to, bring it on the side of contracts so enforceable. As I see it, we are allowing the third party to come in and sue on the contract merely because the parties to it have agreed that he should be paid, without reference to the intention of the parties as to his benefit or interest.

This clause was a common one in the contracts of general contractors long before it was embodied in the surety bonds given by the contractors, and, as is well known, its sole object and purpose, originally, at least, was to protect owners against mechanics' liens on their property for unpaid bills of subcontractors. And of these stipulations, Williston said, in a discussion in 15 *Harvard Law Review,* 767, 783:

"In most cases the fulfilment of this promise by the contractor operates to discharge a liability of the owner of the building, whose building would be liable to satisfy the liens given by the law to workmen and materialmen. It cannot, therefore, be inferred that the promisee requires the promise in order to benefit such creditors of the contractor. The natural inference is that his object is to protect himself or his building. When, however, the owner of the building is a municipality, or county, or state, such an inference cannot so readily be justified, for the laws give no liens against the buildings of such owners. In such cases if the stipulation can be regarded as the result of more than the accidental insertion of a provision common in building contracts without reflection as to its necessity, it must be supposed that the object was to benefit creditors of the contractor. This supposition becomes a certainty when the legislature, in view of litigation in the courts in regard to the matter, enacts that all building contracts made by towns or counties shall contain such a stipulation."

There seems to me to be no reason for supposing, in this case, that the stipulation had any object beyond that of protecting the owner and his property. And not only is there an absence of support for an inference that he had any other intention; there are difficulties in the way of that

inference. It is not easy to suppose that owners taking such bonds would intend to admit others to the security of the bonds as beneficiaries, in hostility, perhaps, to the interests of the owners. In *Fosmire v. National Surety Company*, 229 N. Y. 44, it was held to be contrary to the intention of a bond given to the state, with such a clause, that laborers should have a cause of action on it; and the court (Cardozo, J.), pointed out that if such an intention were inferred, "They may sue for wages as often as there is default, and exhausting the penalty of the bond leave nothing for the state. That danger was pointed out in *Buffalo Cement Co. v. McNaughton,* 90 Hun. 74, where a bond was given to a city by the contractors for a sewer. 'Such actions might have been brought before the completion of the sewer, and the penalty named in the bond exhausted, and the city thereby deprived of the protection which the bond was intended to give to it' (*Buffalo Cement Co. v. McNaughton, supra,* at p. 79; *Lancaster v. Frescoln,* 203 Penn. St. 640, 644). The state did not intend to make employees of its contractors the beneficiaries of a cause of action to be enforced in hostility to its own. There is nothing far-fetched or visionary in the danger that would follow the recognition of such competing claims of right. In this very case, we have the admission of counsel that the state completed the work on the default of the contractors, and did so at increased cost and heavy loss, for which the bond was security. The outcome illustrates the possibilities of a divided right of action."

My conclusion is that the third party has no right of action in this contract, and that the judgment should be **reversed.**