WHEATON TRIANGLE LANES, INC. *v.*
RINALDI ET AL.

[No. 52, September Term, 1964.]

*Decided November 13, 1964.*

The cause was argued before HENDERSON, C. J., and PRES-COTT, MARBURY, SYBERT and OPPENHEIMER, JJ.

*William D. Donnelly* for the appellant.

*Francis W. Taylor* for the appellees.

MARBURY, J., delivered the opinion of the Court. PRESCOTT, J., concurs in the result.

In May, 1961, the capital stock of Wheaton Bowling and Recreational Center, Inc., later known as Wheaton Triangle Lanes, Inc. (Wheaton), was owned fifty per cent each by brothers LeRoy M. Rinaldi (LeRoy) and Nicholas E. Rinaldi (Nicholas). They also owned the same ratio of stock interest in two other corporations, Rinaldi Enterprises, Inc. (Rinaldi), and Queenstown Duck Pin Bowl, Inc. (Queenstown). There were intercorporation account balances and both of the stockholders were substantial creditors of Wheaton. Disagreements had arisen between the two brothers and they agreed to separate their interests.

On May 18, 1961, the brothers entered into an agreement for settlement of their differences and for separation of their ownerships. In substance, Article A of this agreement provided that Nicholas should become the owner of all the stock of Queenstown, and that all debts owed by that corporation to LeRoy or the other two corporations should be payable to Nicholas; that LeRoy should become the owner of all of the stock of Wheaton and Rinaldi corporations, and that all debts of those two corporations owed to Nicholas or to Queenstown should be payable to LeRoy; and that LeRoy should pay Nicholas $85,000. The agreement also included the specific representation and warranty of Nicholas that any liabilities that he had incurred for the account of Wheaton and Rinaldi and not recorded on their ledgers did not exceed $250. It is significant that the agreement stated that: "Representations and warranties made in this agreement shall survive settlement." Article C of the agreement provided for exchanges of releases by the parties and all the corporations. A modifying agreement dated August 15, 1961, amended Article A to make a note for $100,-

000 the cash consideration, to postpone settlement to September 1, 1961, and to make Article A of the original agreement conclusive and binding on all parties. Final settlement was effected on October 4, 1961, and general releases executed which provided that the obligations assumed and the rights of indemnity arising out of the settlement agreement should be fulfilled.

Glenmont Lanes, Inc. (Glenmont), in June 1960 was owned fifty per cent by Nicholas and fifty per cent by Alphonse E. Leemans. On June 7, 1960, Glenmont loaned Wheaton $4,000 evidenced by a check, and since this amount has never been repaid, Glenmont filed a declaration against Wheaton on May 17, 1962, to recover the loan. The defendant, Wheaton, filed its plea and counterclaim; and after trial, judgment was rendered for the plaintiff Glenmont, both on the original declaration for $4,000 and on the counterclaim, which judgment is not the subject of this appeal.

Defendant, Wheaton, as a third-party plaintiff in the same proceeding filed a third-party claim against Nicholas and Queenstown, of which Nicholas was also president. The third-party claim for money had and received alleged that if any money had been loaned by Glenmont, it had been paid over to Nicholas as president of Wheaton for it, but he had never paid such money over to Wheaton or accounted for it; that he had instead caused a $4,000 check payable to Wheaton to be recorded on the books of that corporation as a debt owing to Nicholas individually. The claim alleged that because the obligation had been incorrectly credited as owed to Nicholas, the amount of the debt had been mistakenly repaid by Wheaton to Nicholas by direct payments or by payments made by Queenstown, charged to Wheaton, as an account receivable on the books of Queenstown and reimbursed to Queenstown in the settlement of accounts between the two corporations as part of the settlement agreement. The third-party defendant pleas of Queenstown and Nicholas each relied on the releases given by Wheaton in consummation of the settlement agreement. The plea of Nicholas also relied on an assignment of all the claims of Wheaton against Queenstown.

At the trial on the original declaration and the third-party claim, the evidence showed that the Glenmont check for $4,000

dated June 7, 1960, payable to Wheaton was signed by Nicholas and bore no endorsement by Wheaton, but that Wheaton's depository bank had affixed the endorsement: "Credited To The Account of The Within Named Payee ENDORSEMENT GUARANTEED SUBURBAN TRUST COMPANY WHEATON, MARYLAND." The check was brought to the Wheaton office by Nicholas, who was at that time president of both corporations, but he could not remember to whom he gave it. The ledger entry on Wheaton's books for the $4,000 loan did not show a liability to Glenmont, but rather a credit for the same amount to Nicholas. At the time of the delivery of the releases and consummation of the settlement agreement, according to LeRoy's testimony, he did not know of the claim of Glenmont for the asserted $4,000 loan. In Wheaton's checkbook, there appeared on a stub a deposit entry: "n/r-6/8 $4,000.00" the initials meaning Nicholas Rinaldi. Wheaton's bookkeeper, Mrs. Santini, testified that she did not remember who told her to make the entry. Both Nicholas and LeRoy denied directing her to make it. The bank statement of Wheaton for the period of May 31, 1961 to June 30, 1961, showed the deposit in its account on June 9 of $4,000 with the notation "N/R". The certified public accountant for Wheaton testified that he placed those initials on the bank statement, and that it meant that Nicholas had put the $4,000 into the bank account. He explained that he asked Nicholas if he had put that sum in the bank, and he said: "Yes, I put it in," and this notation "N/R" meant that the money came from Nicholas individually, and not from Glenmont. There were four repayments to Nicholas in the total amount of the $4,000 loan within two months after it was deposited in the account of Wheaton. All of the checks were signed by Nicholas, either as president of Wheaton or Queenstown, and all were payable to Nicholas E. Rinaldi.

The order of the trial court on November 18, 1963, concerning the third party proceedings, entered judgment for the third-party defendants, Nicholas and Queenstown, and against the third-party plaintiff, Wheaton. In the trial judge's opinion the decision was based on the ground that Wheaton's claim was barred by the settlement agreement and releases. This judg-

ment gives rise to the present appeal, in which Wheaton argues that the trial court erred as a matter of law in failing to give effect to the saving and excepting language of the releases upon which it based judgment for Nicholas and Queenstown.

The releases upon which the court below relied each contained substantially identical excepting clauses:

> "* * * saving and excepting from the operation hereafter, however, and preserving the obligations specifically provided to be assumed in, and the rights of indemnity arising in accordance with or pursuant to, the Settlement Agreement and supplemental Agreement between Nicholas E. Rinaldi, Francis W. Taylor and LeRoy M. Rinaldi, both dated May 18, 1961, and/or any modification or amendment thereof signed by the same and/or additional parties."

The agreement of settlement of May 18, 1961, provided in paragraph 6, entitled Representations and Warranties of Nicholas:

> "Nicholas represents and warrants that any liabilities or obligations, secured or unsecured, that he has incurred or caused to be incurred for the account of the Wheaton Corporation or the Rinaldi Corporation, other than those presently recorded in the ledgers of the respective corporations, do not exceed $250.00 in total amount."

In the same agreement, paragraph 7 entitled Settlement states:

> "Under this Article A, settlement shall take place sixty days from the date hereof or such earlier day as arrangements for the required financing make possible. * * * Representations and warranties made in this agreement shall survive settlement."

In Article C, provisions were made for exchange of the releases as part of the settlement.

The general principle in the construction or interpretation of contracts is that the intention of the parties must be gathered from the contents of the document itself and not by considera-

tion of the provisions separately. *Coopersmith v. Isherwood,* 219 Md. 455, 150 A. 2d 243; *Hart v. Hart,* 165 Md. 77, 166 Atl. 414; *Accident Co. v. Net & Twine Co.,* 150 Md. 40, 132 Atl. 261. Further, the rule concerning releases is stated by this Court in *Shriver v. Carlin & Fulton Co.,* 155 Md. 51, 64, 141 Atl. 434: "* * * 'The equitable rule now prevails, and a release is to be construed according to the intent of the parties and the object and purpose of the instrument, and that intent will control and limit its operation.' "

The language of the releases involved in this case showed that the intention of the parties was not to relieve the third-party defendant, Nicholas, of the obligation arising under his representation and warranty in the settlement agreement. It is a long recognized rule that where a writing refers to another document, that other document is to be interpreted as part of the writing. *Kirby & McGuire v. Board of Ed.,* 210 Md. 383, 123 A. 2d 606; *Lednum v. Barnes,* 204 Md. 230, 103 A. 2d 865; *Ray v. Eurice,* 201 Md. 115, 93 A. 2d 272. Under these circumstances we consider the settlement agreement and releases together. The erroneous credit and payments in favor of Nicholas, on which Wheaton's third-party claim is based, and the erroneous omission to give proper book credit to Glenmont, are all part of the same mistake of fact, e.g., the identity of the true creditor of Wheaton on the loan of $4,000. Thus giving effect to all portions of the instruments and due regard to their objects and purposes, we hold that the settlement agreement and releases do not destroy the third-party claim of Wheaton. The trial court was in error in ruling that since there was a final settlement, the burden was on the third-party plaintiff to show that there was fraud on the part of the third-party defendants in order for it to recover against them. Maryland Rule 886 a. The third-party claim was within the exception stated in the releases, so judgment should have been entered for the third-party plaintiff. The result of the trial court's finding in favor of the third-party defendants on the third-party claim meant that appellees were absolved from the obligation to repay the loan which was due Glenmont, but which was erroneously credited as being due Nicholas and subsequently repaid to him; and as a result of the judgment on the

original declaration, Wheaton had to pay again the amount of the loan to Glenmont.

> *Judgment on third-party claim in favor of third-party defendants, Nicholas E. Rinaldi and Queenstown Duck Pin Bowl, Inc., appellees, reversed; and judgment entered in favor of third-party plaintiff, Wheaton Triangle Lanes, Inc., appellant, against the appellees in the amount of $4,000, with interest from November 18, 1963. Costs on this appeal to be paid by appellees.*

PRESCOTT, J., concurs in the result.