784 A.2d 621

HOUSING AUTHORITY FOR PRINCE GEORGE'S COUNTY

v.

Deborah WILLIAMS.

No. 2250, Sept. Term, 2000.

Court of Special Appeals of Maryland.

Nov. 2, 2001.

Alberta A. Holloway, Associate County Attorney (Sean D. Wallace, County Attorney and John A. Bielec, Deputy County Attorney, on the brief), Upper Marlboro, for appellant.

No brief or appearance by appellee.

Argued before MURPHY, C.J., DAVIS and JOHN J. BISHOP, Jr. (Retired, specially assigned), JJ.

DAVIS, Judge.

Appellant Housing Authority for Prince George's County filed in the District Court of Maryland for Prince George's County a suit against appellee Deborah Williams for breach of lease. The case was removed to the Circuit Court for Prince George's County, but the parties entered into a settlement agreement before a show cause hearing could be held. Thereafter, appellant filed a Motion for Judgment of Possession, alleging that appellee had breached the settlement agreement. The court dismissed the motion. Appellant timely filed this appeal, presenting one question, which we rephrase as follows:

> Did the trial court err in denying appellant's motion for judgment of possession?

## PROLOGUE

This appeal presents the troubling question of how the legislative purposes and objectives of 42 U.S.C. § 1437d(1)(2001) can best be achieved. Congress has sought to insure that those members of the citizenry with inadequate means to pay for the bare necessities should not be relegated to substandard housing because of lack of resources. Moreover, Congress has recognized that one's income should not be determinative of whether such housing should be in a crime-infested neighborhood or one free of the criminal element. We are asked, in this appeal, to decide whether appellant was entitled to evict its tenant because of the criminal activity of two members of the household. Exacerbating the legal quandary here presented is that the two household members who engaged in illegal activity were minors for whom the tenant was responsible and thus had a legal duty to provide necessities, including shelter.

Any impediment to the ability of an agency to evict tenants who house those engaged in criminal activity—in this case distribution and possession of illicit drugs—renders the provisions of § 1437d(1) nugatory. In other words, if the member or members of the household repeatedly engage in criminal activity on an ongoing basis, appellant would have no way to

curtail such criminal activity because the tenant may interpose his or her ignorance of such activity or set up as a bar to eviction the fact that the offender is a juvenile. The logical extension of the inability to remove a tenant, regardless of the tenant's complicity or knowledge of the criminal activity, would be the uncontrolled and uncontrollable proliferation of that criminal activity throughout the public housing project. Such a result is clearly not what Congress intended.

Consequently, we are constrained, in our ultimate disposition in this case, to consider the competing interests of the law-abiding tenants who are entitled to live in a crime-free public housing project and the tenant whose household members engage in criminal activity in violation of the terms of the tenant's lease agreement. We answer the question raised by appellant in the affirmative and therefore reverse the judgment of the circuit court; however, on remand, we direct the circuit court to make findings of fact consistent with this opinion, which we believe should be the basis upon whether appellant should successfully be able to go forward with eviction proceedings.

## FACTUAL SUMMARY

On June 30, 1993, appellant and appellee entered into a leasehold agreement for the premises known as 9246 Cherry Lane in Laurel, Maryland. The residence was located in a public housing project known as Kimberly Gardens. Appellee's sons, Dion and Antoine Cauley, and her daughter, Demica Cauley, were listed as occupants in the lease. A rider to the lease, executed on the same date, provided:

A public housing tenant, member of tenant's household, guest or other person under the tenant's control engaged in criminal activity, including but not limited to "drug-related criminal activity," on or near public housing premises, while the tenant resides in public housing, such activity shall be cause for termination or tenancy.

The term "*drug-related criminal activity*" includes but is not limited to the illegal manufacture, sale, distribution, use,

or possession with intent to manufacture, sell, distribute, or use, of a controlled substance.

... Violation of the provisions of the Rider shall be considered a material violation to the Lease and grounds for termination of the Lease.

Dion was arrested on January 9, 1998 after he introduced an undercover police officer to a man who sold the officer cocaine. It appears that Dion was charged with conspiracy to distribute cocaine, although no documents detailing the charges or the disposition of the case are contained in the record. The alleged drug sale occurred in Kimberly Gardens. Appellant notified appellee on January 20, 1998 that her lease had been terminated and, on May 15, 1998, it filed an amended complaint against appellee in the Circuit Court for Prince George's County. The complaint alleged that Dion's arrest constituted a material breach of the lease and that appellee had failed to vacate the premises, despite a notice of termination.

The parties entered into a Settlement Agreement (Agreement) on May 10, 1999. Paragraph two of the Agreement provided:

Without admitting any allegation of [appellant], and without admitting any past wrongful acts, [appellee] agrees:

A. That [appellee], member's [sic] of [appellee's] household, and any guests under [appellee's] control, will not engage in criminal activity, including but not limited to "drug-related criminal activity," on or near [appellee]'s premises at 9246 Cherry Lane, Laurel MD 20708.

B. That [appellee] and member's [sic] of [appellee's] household will abide by all other provisions of [appellee's] current lease with [appellant].

The Agreement further provided that, if within one year of the Agreement appellee failed to comply with paragraph two, appellant could file a Motion for Judgment of Possession.

Antoine was arrested on March 1, 2000 and charged with possession of marijuana. The arrest report indicates that a

police officer observed Antoine loitering in Kimberly Gardens. When Antoine became aware of the officer's presence, he tossed several objects on the ground, including a baggie containing marijuana. Antoine was fourteen years old at the time of his arrest. On March 21, 2000, appellant notified appellee that Antoine's conduct constituted a violation of the Agreement and that it would take legal action against appellee to regain possession of the premises if she did not vacate them by April 5, 2000. On May 9, 2000, appellant filed a Motion for Judgment of Possession in the circuit court. A show cause hearing was held on August 18, 2000, at which the court denied appellant's motion. The court noted that, although the parties' Agreement stated that any criminal activity by appellee or members of her household would result in eviction, it did "not define criminal activity as including activity participated in by a juvenile...." It reasoned that "a juvenile is not involved in criminal activity *per se* because, although it's alleged that he [or she] may commit a crime, it's still—it's handled in a juvenile proceeding which is, by its very nature, not criminal." Antoine's possession of marijuana, the court concluded, did not constitute a breach of the Agreement.[1]

## LEGAL DISCUSSION

### I

Appellant contends that the trial court erred in denying appellant's motion for judgment of possession. It argues that the lease and Agreement were valid contracts between the parties that should be enforced. The fact that Antoine is a juvenile is not relevant, appellant maintains, because the basis for eviction is not his actions, but appellee's failure to prevent those actions.

---

1. The trial court heard no testimony at the hearing and made no factual finding whether Antoine actually possessed marijuana. In determining whether the court was correct that the Agreement did not apply to juvenile acts, we assume, *arguendo,* that Antoine was in possession of marijuana.

" 'Courts look with favor upon the compromise or settlement of law suits in the interest of efficient and economical administration of justice and the lessening of friction and acrimony.' A valid settlement agreement is a type of contract." *Calabi v. Government Employees Ins. Co.*, 353 Md. 649, 653, 728 A.2d 206 (1999) (citations omitted). Neither party disputes the validity of the Agreement signed May 10, 1999; therefore, we apply contract principles to determine whether appellee breached the Agreement.

The "paramount consideration" in the construction of a contract is to "divine the intent of the parties." *Post v. Bregman*, 112 Md.App. 738, 750, 686 A.2d 665 (1996), *rev'd on other grounds*, 349 Md. 142, 707 A.2d 806 (1998). This intent "must be gathered from the contents of the document itself and not by consideration of the provisions separately." *Wheaton Triangle Lanes, Inc. v. Rinaldi*, 236 Md. 525, 530–31, 204 A.2d 537 (1964).

> [T]he court must analyze the contract based on the plain meaning of the words used. "Where the language of a contract is clear and unambiguous, there is no room for construction and (the court) 'must presume that the parties meant what they expressed.' "

*Post*, 112 Md.App. at 750–51, 686 A.2d 665 (citations omitted).

The Agreement provides for the termination of appellee's lease if one of two conditions is violated. First, appellee, members of her household, and any guests under her control were to refrain from "criminal activity, including but not limited to 'drug-related criminal activity,' " on or near the premises. Second, appellee and members of her household were to "abide by all other provisions of [appellee]'s current lease with [appellant]."

The Agreement does not include any definition of "criminal activity." The term "drug-related criminal activity," however, is defined, albeit in the parties' original lease. "It is a long recognized rule that where a writing refers to another document, that other document is to be interpreted as part of the writing." *Rinaldi*, 236 Md. at 531, 204 A.2d 537. Because the

Agreement reiterates that appellee and members of her household must comply with the terms of the lease, the lease is made part of the Agreement. The lease provides that [t]he term *"drug-related criminal activity"* includes but is not limited to the illegal manufacture, sale, distribution, use, or possession with intent to manufacture, sell, distribute, or use, of a controlled substance.

■ The trial court found that the Agreement's prohibition of criminal activity is inapplicable to acts committed by juveniles. It reasoned that "a juvenile is not involved in criminal activity *per se* because, although it's alleged that he [or she] may commit a crime, . . . it's handled in a juvenile proceeding which is, by its very nature, not criminal." The court erred in this determination. While it is true that a juvenile delinquency hearing is not a criminal proceeding, the underlying conduct may still be criminal in nature. This distinction is supported by Md.Code (1998 Repl. Vol, 2000 Supp.), Cts. & Jud. Proc. § 3–801(k), which defines a "delinquent act" as "an act which would be a crime if committed by an adult." Antoine's possession of marijuana was a criminal act, despite the fact that it could only have resulted in a finding of delinquency.

Moreover, the lease's definition of "drug-related criminal activity" makes clear that an act need not lead to a criminal conviction to constitute a breach. This definition includes, among other activity, "the *illegal* . . . possession with intent to manufacture, sell, distribute, or use, a controlled substance." This definition extends the universe of acts constituting a breach of the lease to illegal acts. Even if it can be argued that Antoine's possession of marijuana was not *criminal,* there is no doubt that this activity, which could have resulted in a delinquency finding, was *illegal.* The terms of the Agreement were therefore applicable to acts committed by a juvenile.

## II

The clause in the parties' lease proscribing criminal activity was required by 42 U.S.C. § 1437d(l) (2001) and regulations

promulgated thereunder. *See* 24 C.F.R. § 966.4(f)(12)(i) (2001). A host of court decisions across the country have addressed the fairness of evictions from public housing under such lease provisions when they result from the illegal acts of household members or guests not parties to the lease. *See, e.g., Rucker v. Davis,*[2] 237 F.3d 1113 (9th Cir.2001) (holding that Congress did not intend eviction of innocent tenants based on the criminal activity of third parties); *Allegheny County Housing Auth. v. Hibbler,* 748 A.2d 786 (Pa. Commw.Ct.2000) (holding that a court was required to consider "all relevant circumstances" before evicting a tenant based on son's drug possession); *City of S. San Francisco Housing Auth. v. Guillory,* 41 Cal.App.4th Supp. 13, 49 Cal.Rptr.2d 367 (1995) (holding that tenant's eviction based on son's drug possession did not violate the tenant's constitutional right to due process). Indeed, one commentator has argued that Congress should amend § 1437d(*l* ) to make clear that evictions for the criminal acts of third parties should occur only upon a showing that the tenant could have foreseen and prevented those acts. E.J. Hurst, *Rules, Regs, and Removal: State Law, Foreseeability, and Fair Play in One Strike Terminations from Federally–Subsidized Public Housing,* 38 Brandeis L.J. 733 (2000).

As we have noted, *supra,* the competing interests involved in the instant case are the rights of law-abiding tenants to a crime-free housing project as opposed to the rights of a tenant whose only culpability is providing shelter for those who would break the law. Had appellee's two sons been at or above the age of majority, she could simply order them out of the house. Because they were both minors, if she were unable to persuade them to comply with prohibitions in the lease against engaging in criminal activity, her only alternatives, at that point, would be to seek interdiction from a social service or

---

**2.** On September 25, 2001, the Supreme Court granted *certiorari* and consolidated No. 00–1770 *Rucker v. Davis,* 237 F.3d 1113 (9th Cir.2001) and No. 00–1781, brought by the Oakland, California Housing authority to pass upon the legislative intent of 42 U.S.C., § 1437 d(1).

juvenile agency or relocate to a new residence other than public housing.

 We believe that the reasoning in *Allegheny County Housing Auth. v. Hibbler, supra,* that all of the relevant circumstances should be presented in an evidentiary hearing before a tenant may be evicted based on the drug possession of the tenant's son, best accommodates the competing interests of the tenant subject to eviction and the other residents of the housing project. We believe that the relevant circumstances which should be considered, particularly in a case where the offenders are juveniles, are whether the tenant could have foreseen and prevented the criminal activity and, more specifically, what actions have been taken by the tenant, including seeking assistance from governmental or private sources to end such criminal activity. The measure employed by the tenant to curtail the criminal activity on the premises as well as any evidence that the tenant could not have foreseen or prevented the illegal acts should be presented at an evidentiary hearing where the burden is upon the tenant to establish that he or she undertook all measures available to bring his or her household into compliance with the prohibition in the lease. The lower court, upon a finding that the tenant was wholly without knowledge of the criminal activity or has done everything possible to curtail the illegal acts of the household member, including resort to assistance from sources outside the household, should not grant the application for eviction of the tenant. On the other hand, when the lower court is able to articulate that the tenant had knowledge of the criminal activity occurring on the premises and the court is able to articulate measures which should have been taken which were not taken to cause the criminal activity to cease, the application for eviction should be granted.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY REVERSED; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY APPELLEE.**