DECISION.
Plaintiff-appellant Cincinnati Metropolitan Housing Authority ("CMHA") appeals the trial court's entry of judgment in favor of defendant-appellee, Deborah Browning, on its complaint for forcible entry and detainer. Because we hold that the trial court erred as a matter of law in granting judgment to Browning, we reverse the judgment and remand this cause for further proceedings consistent with this decision.
 Facts and Proceedings
Browning, along with her four children, ages twelve, fourteen, fifteen, and seventeen, resides in a publicly subsidized apartment in Cincinnati. Browning leases the apartment from CMHA, a federally funded public housing authority. All four children are listed on the lease as household members.
As required by federal law,[1] the lease Browning signed with CMHA contains, in a section labeled "Obligations of the Tenant," the following language:
The tenant is obligated:
* * *
 12) To assure that the Tenant, any members of the household, a guest, or another person under their control, shall not engage in (a) any criminal activity that threatens the health, safety, or the right to peaceful enjoyment of the public housing premises by other tenants, or employees of CMHA, or (b) any drug related criminal activity on or off such premises. Any activity in violation of the preceding sentence shall be cause for termination of the Lease, and for eviction from the Dwelling Unit. The term "drug related criminal activity" is defined as the illegal manufacture, sale, distribution, use or possession with intent to manufacture, sell, distribute, or use, of a controlled substance (as defined in Section 102 of the Controlled Substance Act (21 U.S.C. § 802).
 This required lease provision is intended to help improve living conditions in public housing, by attacking the problem of drugs and crimes.[2]
Browning's lease also contains a separate "Termination of Lease" section that details CMHA's "one strike, zero tolerance" policy with respect to violations of lease terms regarding criminal activity and certain other activity. This provision provides as follows:
 One strike. CMHA has a "one strike" or "zero tolerance" policy with respect to violations of Lease terms regarding criminal and certain other activity. Either of the following types of activity by the tenant, any member of the household, a guest or another person under their control shall be cause for termination of this Lease even in the absence of an arrest or conviction.
 a. Any criminal activity that threatens the health, safety or right to peaceful enjoyment of CMHA public housing premises by other residents or CMHA employees, or
 b. Any drug-related criminal activity on or off CMHA public housing premises.
 ANY ACTIVITY OR DRUG-RELATED CRIMINAL ACTIVITY SPECIFIED ABOVE CONSTITUTES A SERIOUS VIOLATION OF MATERIAL TERMS OF THE LEASE AND WILL BE GROUNDS FOR TERMINATION OF THE LEASE AND EVICTION FROM THE DWELLING UNIT. SUCH ACTIVITY CONSTITUTES GROUNDS FOR TERMINATION AND EVICTION NOTWITHSTANDING THE ABSENCE OF AN ARREST CONVICTION.
 This "one strike, zero tolerance" provision is apparently based upon federal regulations[3] and a 1996 Executive Office announcement of a "One Strike and You're Out" policy, which encourages public housing authorities to evict tenants for criminal activity regardless of the circumstances.[4]
In the early morning hours of May 10, 2000, a police officer stopped Browning's fifteen-year-old son, Roderico, for a curfew violation on CMHA property. After a search, the officer found 3.51 grams of marijuana in his pants pocket. The officer then cited Browning's son for acts that, if committed by an adult, would have constituted a violation of R.C.2951.02, possession of drugs. The juvenile court adjudicated him delinquent, assessed costs, and suspended his eligibility for a driver's license until August 14, 2002, or until his satisfactory completion of a drug-education intervention program.
On June 22, 2000, CMHA served Browning with a three-day notice to leave the premises. The notice of termination of tenancy provided, in relevant part,
 Management has learned that you, a member of your household, a guest or other person under your control has engaged in:
* * *
 ()Drug related criminal activity on or near CMHA s public housing premises.
* * *
After stating, verbatim, the lease s one strike, zero tolerance policy for drug-related criminal activity, the notice further provided that Roderico s arrest for drug abuse was a direct and serious violation of the lease agreement that required Browning to vacate the premises.
When Browning refused to vacate the premises, CMHA filed a complaint for forcible entry and detainer, seeking restitution of its premises pursuant to the "one strike, zero tolerance" drug provision in its lease with Browning. Browning filed an answer and jury demand. On December 19, 2000, Browning filed a motion for summary judgment in which she argued that CMHA could not evict her because federal and state law prohibited CMHA from considering the delinquent acts of her minor son as crimes. As a result, Browning argued that CMHA could not enforce its "one strike, zero tolerance" policy and that she was entitled to summary judgment as a matter of law. Browning alternatively urged the trial court to invoke its equity jurisdiction and to relieve her from the forfeiture of her tenancy. In opposition, CHMA argued that the federal regulations that served as the basis for the lease language, as well as federal and state case law, made no distinction between a juvenile and an adult in the enforcement of the "one strike, zero tolerance" policy.
On January 16, 2001, the trial court entered judgment for Browning, and this appeal followed, with CMHA asserting three assignments of error.
 Standard of Review
This court reviews the entry of summary judgment de novo on the basis of an independent review of the record.[5] A motion for summary judgment is properly granted if the trial court, upon viewing the inferences to be drawn from the underlying facts set forth in the pleadings, depositions, answers to interrogatories, written admissions, and affidavits in a light most favorable to the party opposing the motion, determines that (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) the evidence demonstrates that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party opposing the motion.[6]
 Analysis
In its first assignment of error, CMHA contends that the trial court erred in holding as a matter of law that CMHA could not evict an adult tenant for the unlawful acts of a juvenile residing with the tenant in housing authority property. We agree.
In rendering judgment in favor of Browning, the trial court found the lease's prohibition of criminal activity inapplicable as a matter of law to acts committed by juveniles. It reasoned, "A juvenile case is not criminal activity or a criminal drug offense." Therefore, Roderico's possession of marijuana and his subsequent delinquency adjudication could not amount to a violation of Browning's obligations under the lease. As this was the only ground CHMA presented for the eviction, the trial court granted summary judgment to Browning.
Browning argued in her motion for summary judgment that federal housing law and state law contemplated a distinction between the acts of a juvenile and those of an adult. This distinction required the "one strike, zero tolerance" policy for drug or other criminal activity to apply only to adult members of the household. According to Browning, this limitation was evidenced in Section 1437(d)(s), Title 42, U.S. Code, which provides,
 A housing agency may require, as a condition of providing admission to the public housing program, * * * that each adult member of the household provide a signed, written authorization for the public housing agency to obtain records * * * from the National Crime Information Center, police departments, and other law enforcement agencies.
 "Adult" is defined in Section 1437d(Q)(8)(A), Title 42, U.S. Code, as "a person who is 18 years of age or older, or who has been convicted of a crime as an adult under Federal, State or Tribal law."
 Browning further argued to the trial court that the clear policy of Ohio with regard to juvenile offenders was rehabilitative and not punitive, and that juvenile court proceedings were civil in nature and not criminal. Therefore, as a matter of law, a juvenile act could not be considered a "criminal act."
We reject these arguments. Courts apply traditional contract principles when interpreting lease provisions.[7] When the terms of the lease are clear and unambiguous, courts may not create a new contract by finding an intent not expressed in those terms.[8] By its plain terms, the relevant provision of the lease in this case prohibits any
drug-related criminal activity by a tenant or household member on or off housing property. Drug-related criminal activity is specifically defined in the lease as "the illegal manufacture, sale, distribution, use or possession with intent to manufacture, sell, distribute, or use, of a controlled substance (as defined in Section 102 of the Controlled Substances Act (Section 802, Title 21, U.S.Code)). The lease in question makes no distinction between adult and juvenile offenders. Further, the federal statute and HUD regulations on which the lease language is patterned are clear and unambiguous. The statute and regulations, like the lease, use the word "any." "Any" does not exclude juvenile acts.
Contrary to Browning's assertions, this interpretation of the lease language does not conflict with Ohio's treatment of juvenile offenders. R.C. 2151.02 provides, in relevant part, that a delinquent child includes "any child who violates any law of this state or the United States, or any ordinance or regulation of a political subdivision of the state, that would be a crime if committed by an adult * * *.[9] This section recognizes that a child can violate a law, ordinance or regulation. R.C. 2151.35.8(H) provides that an adjudication of delinquency "shall not impose any of the civil disabilities ordinarily imposed by conviction of a crime in that the child is not criminal by reason of the adjudication and no child shall be charged with or convicted of a crime in any court except as provided by this chapter." Reading these two sections together, we are convinced that, pursuant to Ohio law, a child cannot be convicted of a crime or be considered a criminal unless bound over to adult court, but the act of the child can be considered a violation of a law, ordinance, or regulation, and, therefore, the act can be considered criminal activity.[10] We are not persuaded that a criminal act loses its criminal element because the perpetrator cannot be considered a criminal under state law.
We have found no decisions from Ohio examining whether the delinquent acts of a juvenile can be considered "criminal activity" or "drug-related criminal activity" under a public housing lease. But our decision here accords with a case in which the Maryland Special Court of Appeals held that a minor's possession of marijuana could be considered drug-related criminal activity supporting an eviction from public housing.[11] In Maryland, as in Ohio, juvenile proceedings are civil and not criminal in nature.
Our determination is also supported by Allstate Insurance Co. v.Cutcher,[12] in which the federal district court, applying Ohio law, held that a "criminal acts" exclusion in a homeowner's policy barred liability insurance coverage for a wrongful-death action against the insured's minor son arising out of an incident that led to the son's adjudication for delinquency. The juvenile court had adjudicated the son delinquent after finding that he had committed the offense of involuntary manslaughter.
In this case, the trial court's holding that a juvenile act cannot be considered criminal activity or drug-related criminal activity under the lease is erroneous as a matter of law. The language of the lease makes no distinction between the criminal activity of juveniles and that of adults. Therefore, whether Ricardo's unlawful acts were sufficient to constitute Browning's breach of the lease and justify CMHA's termination of the lease are issues of fact to be decided on remand.
Accordingly, the first assignment of error is sustained.
In its second assignment of error, CMHA argues that the trial court failed to construe the plain meaning of its "one strike, zero tolerance" provision, which provided CMHA with good cause to terminate Browning's tenancy based on the drug activity of her minor son. In its third assignment of error, CMHA argues that the trial court erred in granting summary judgment because Browning's equity defense involved factual issues that must be determined by a trier of fact. These issues are not ripe for review at this point in the litigation. Accordingly, the second and third assignments of error are overruled.
We reverse the judgment of the trial court and remand this matter for further proceedings consistent with the law and this decision.
Judgment reversed and cause remanded.
Gorman, P.J., Sundermann and Shannon, JJ.
Raymond E. Shannon, retired, of the First Appellate District, sitting by assignment.
[1] Section 1437d(l)(5), Title 42, U.S. Code, now Section 1437d(l)(6), Title 42, U.S.Code. In 1990 and 1996, Congress altered the language of the original provisions, but the import of the provisions has remained the same. In 1991, the Department of Housing and Urban Development issued regulations pursuant to the statute. These regulations have been amended and renumbered. See Sections 966.4(f)(12) and 966.4(l)(2)(ii)(A), Title 24, C.F.R.
[2] See Section 11901, Title 42, U.S.Code.
[3] See Section 966.4(l)(2)(ii), Title 24, C.F.R. and 2001 amendment.
[4] Rucker v. Davis (C.A.9, 2001), 237 F.3d 1113, 1117 (en banc), certiorari granted (2001) ___ U.S. ___, 122 S.Ct. 24. A recent amendment to the federal regulations codifies this policy. Section 966.4(l)(5)(vii), Title 24, C.F.R.
[5] See Koos v. Central Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579,588, 641 N.E.2d 265, 271.
[6] See Civ.R.56(C).
[7] Pool v. Insignia Residential Group (1999), 136 Ohio App.3d 266,270, 736 N.E.2d 507.
[8] Id.
[9] The federal counterpart, Section 5031, Title 18, U.S. Code, provides the following:
 For purposes of this chapter, * * * "juvenile delinquency" is the violation of a law of the United States committed by a person prior to his eighteenth birthday which would have been a crime if committed by an adult or a violation by such a person of section 922(x).
[10] Ohio does not have a general statute limiting the criminal responsibility of a child for his acts, and the Ohio Supreme Court has held that an eight-year-old can form the criminal intent to commit rape. See In re Washington (1996), 75 Ohio St.3d 390, 662 N.E.2d 346.
[11] Housing Authority for Prince George's County v. Williams (2001),141 Md. App. 89, 784 A.2d 621.
[12] 920 F. Supp. 796 (N.D.Ohio. 1996), aff'd without decision, 114 F.3d 1186 (6Cir. 1997).